UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALI EL-KHALIL, DPM,

        Plaintiff,

v.

ANTHONY TEDESCHI, et al,

        Defendants.

Case No. 18-cv-12759

HON. MARK A. GOLDSMITH

_____/

## OPINION & ORDER
## GRANTING IN PART AND DENYING IN PART DEFENDANTS USEN, ZAMLUT, AND KHALIL'S MOTIONS TO DISMISS (Dkts. 39, 41, 42)

This matter is before the Court on the respective motions to dismiss of Defendants Nsima Usen (Dkt. 39), Mahmud Zamlut (Dkt. 41), and Mohammed Khalil (Dkt. 42) (the "Moving Defendants"). The issues have been fully briefed. Because oral argument will not aid the decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). For the reasons that follow, the Court grants in part and denies in part Moving Defendants' motions.

## I. BACKGROUND

Plaintiff Ali El-Khalil is a podiatrist, who had full privileges at Defendant Detroit Medical Center ("DMC"). Am. Compl. ¶¶ 1-2 (Dkt. 35).[1] Moving Defendants are podiatrists who have staff privileges at DMC. Id. ¶¶ 4-6.[2] Plaintiff claims that he reported Moving Defendants' various

---

[1] Because this case is before the Court under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual background is drawn from the allegations made in El-Khalil's complaint.

[2] Defendant Anthony Tedeschi is the CEO of DMC, and has not brought a motion. DMC also has not brought a motion.

acts of health care fraud "to the Government," and that he subsequently lost his staff privileges in retaliation for that reporting. Id. ¶ 12. He brings three claims: retaliation in violation of the False Claims Act, 31 U.S.C. § 3729 et seq.; conspiracy to violate the retaliation provision of the False Claims Act; and tortious interference with an advantageous business relationship.

Starting in 2008, El-Khalil had staff privileges at DMC, which must be renewed every two years. Id. ¶ 13. He has never had any type of malpractice complaint nor any type of patient complaint filed against him. Id. ¶ 14. El-Khalil also had staff privileges at Beaumont Dearborn until 2015. However, his Beaumont privileges were not renewed after he reported various staff members for committing health care fraud. Id. ¶ 17. He informed DMC that his privileges at Beaumont had not been renewed, and DMC renewed his privileges regardless. Id. ¶¶ 18-19.

Since his renewal in 2015/2016, El-Khalil has reported to federal authorities suspected health care fraud that involved the payment of Medicare funds to the perpetrators of the fraud – Defendants and their associates.[3] Id. ¶ 20. Defendants learned of his reporting and threatened El-Khalil, telling him that he would be sorry. Id. ¶ 21. El-Khalil's privileges were suspended by DMC in January 2018, and have not been renewed. Id. ¶ 22.

Moving Defendants have each brought separate motions to dismiss.

## II. STANDARD OF REVIEW

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007) (citing Carver v. Bunch, 946 F.2d 451, 454-455

---

[3] The alleged fraud consisted of the submitting of false claims to Medicare, performing unnecessary medical procedures, and incompetently performing procedures. Id. ¶¶ 27, 32. Defendants Khalil and Usen also allegedly hired a "stand-in" doctor, who was not an authorized provider, to see patients, and paid that stand-in doctor 30% of the billings. Id. ¶¶ 37-41.

(6th Cir. 1991)), cert. denied, 552 U.S. 1311 (2008).  To survive a Rule 12(b)(6) motion, the plaintiff must allege sufficient facts to state a claim to relief above the speculative level, such that it is "plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The plausibility standard requires courts to accept the alleged facts as true, even when their truth is doubtful, and to make all reasonable inferences in favor of the plaintiff.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Twombly, 550 U.S. at 555-556.

Evaluating a complaint's plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.  Although a complaint that offers no more than "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" will not suffice, id. at 678, it need not contain "detailed factual allegations," Twombly, 550 U.S. at 555; see also Erickson v. Pardus, 551 U.S. 89, 93 (2007) ("[S]pecific facts are not necessary . . . .").  Rather, a complaint needs only enough facts to suggest that discovery may reveal evidence of illegality, even if the likelihood of finding such evidence is remote.  Twombly, 550 U.S. at 556.

### III. ANALYSIS

**A. Retaliation/Conspiracy to Retaliate**

Moving Defendants first seek dismissal of the first two counts of the amended complaint, which allege violation of the retaliation provision of the False Claims Act and conspiracy to violate the retaliation provision of the False Claims Act.  For the reasons that follow, this aspect of the motions is granted.

The False Claims Act protects employees from retaliatory action if that employee has made a claim under the Act:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1).

The dispute between the parties on this issue is whether Moving Defendants can be liable for retaliation under the FCA on the grounds that none was an employer of Plaintiff or in an employment-like relationship with him. The dispute arises due to a recent amendment to the law. This amendment was summarized by the Sixth Circuit in <u>Vander Boegh v. EnergySolutions, Inc.</u>, 772 F.3d 1056 (6th Cir. 2014):

> As originally enacted, the FCA's anti-retaliation provision provided that "[a]ny <u>employee</u> who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of his employment by his or her employer because of [a protected activity] shall be entitled to all relief necessary to make the employee whole." 31 U.S.C. § 3730(h); False Claim Amendments Act, Pub. L. 99–562, 100 Stat. 3153 (1986) (emphasis added). Congress amended the FCA in 2009 to expand its scope to "[a]ny <u>employee, contractor, or agent.</u>" Fraud Enforcement and Recovery Act of 2009, Pub. L. 111–21, 123 Stat. 1617, 1624–25 (emphasis added). Although there is no binding precedent in our circuit, other courts have overwhelmingly concluded that the term "employee" in the FCA did not extend to persons outside the employer-employee relationship before the amendment.

<u>Id.</u> at 1062 (alterations and emphasis in original). In <u>Vander Boegh</u>, the Sixth Circuit held that the FCA's protections do not extend to applicants because Congress "intended to limit the FCA to employment-like relationships." <u>Id.</u>

Here, there is no employment-like relationship alleged, as Moving Defendants were merely colleagues of Plaintiff at DMC. Thus, El-Khalil may not recover against Moving Defendants. <u>See</u> <u>Howell v. Town of Ball</u>, 827 F.3d 515, 529-530 (5th Cir. 2016) ("Howell, however, cites no authority interpreting the FCA's 2009 amendment to expand liability to include non-employer

4

individuals. More importantly, viewing the changes to § 3730(h) as a whole, it is clear that the reference to an 'employer' was deleted to account for the broadening of the class of FCA plaintiffs to include 'contractors' and 'agents,' not to provide liability for individual, non-employer defendants.").

El-Khalil relies on two out-of-circuit cases to argue that Moving Defendants can be held liable under the FCA, both of which predate the amendment to the law. See Palladino ex rel. United States v VNA of Southern New Jersey, Inc., 68 F. Supp. 2d 455 (D.N.J. 1999); Mruz v. CARING, Inc., 991 F. Supp. 701 (D.N.J. 1998). Neither case supports El-Khalil's position. In Mruz, the court denied a motion to dismiss as to a particular defendant because there was "a factual question whether she was Plaintiffs' de facto employer as she is alleged to have dominated and dictated the actions of the CARING Corporations and their boards, and to have been conducting the affairs of the CARING Corporations in a way which benefitted her." 991 F. Supp. at 710. The court in Palladino cited Mruz for the proposition that that a non-employer individual may be liable under the FCA if the individual "dominated and dictated the actions of the defendant corporations and their boards." 68 F. Supp. 2d at 464. Here, however, there are no such allegations against Moving Defendants.

The conspiracy claim is also legally untenable, because the FCA does not provide for conspiracy liability against non-employers. See, e.g., Mruz, 991 F. Supp. at 709 ("[L]iability under section 3730(h) cannot be extended on the basis of a conspiracy"); U.S. ex rel Chandler v. Hektoen Inst. for Med. Research, 35 F. Supp. 2d 1078, 1081 (N.D. Ill. 1999) ("The County Defendants cite a well-reasoned district court case holding that § 3730(h) liability cannot be extended to non-employers on the basis of a conspiracy.") (citing Mruz, 991 F. Supp. at 709). Because El-Khalil has cited no case supporting the proposition that liability can be extended on

the basis of a conspiracy and because there are no allegations that Moving Defendants were in an employment-like relationship with Plaintiff, the Court will dismiss the claim as against Moving Defendants.

For these reasons, the Court grants Moving Defendants' motions as it relates to the retaliation and conspiracy to retaliate claims.

**B. Tortious Interference**

Defendants Usen and Zamlut also ask that the Court dismiss Count Three: tortious interference with an advantageous business relationship.[4] The elements of a claim for tortious interference with an advantageous business relationship are:

> (i) the existence of a valid business relationship or expectancy; (ii) knowledge of the relationship or expectancy on the part of the defendant; (iii) intentional interference causing or inducing a termination of the relationship or expectancy; and (iv) resultant actual damage.

Lucas v. Monroe Cnty., 203 F.3d 964, 979 (6th Cir. 2000) (citing Wilkerson v. Carlo, 300 N.W. 2d 658, 659 (Mich. Ct. App. 1980)).

Defendants Usen and Zamlut both argue that El-Khalil has not sufficiently pleaded these elements, specifically the third one. "One who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." Lifeline Ltd. No. II v. Connecticut General Life Ins. Co., 821

---

[4] Defendant Khalil asks that the Court abstain from deciding this claim as Plaintiff has brought a similar claim against him in Wayne County Circuit Court. See Khalil Mot. at 24 (Dkt. 42). However, this argument – tersely raised in the "Conclusion" of Khalil's brief – is underdeveloped. The Court will deny the motion without prejudice as it relates to abstention. See McPherson v. Kelsey, 125 F.3d 989, 995-996 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (alteration in original).

F. Supp. 1213, 1216 (E.D. Mich. 1993) (quoting Prysak v. R.L. Polk Co., 483 N.W.2d 629, 635 (Mich. Ct. App. 1992)). In the complaint, Plaintiff alleges that Moving Defendants interfered with an advantageous business relationship by orchestrating false complaints against him with the intent to have his privileges at DMC terminated. See Am. Compl. ¶¶ 60, 75. El-Khalil argues that this allegation establishes Moving Defendants' malice and nefarious intent. El-Khalil has the better part of the argument.

The Michigan courts have considered unethical conduct to be a per se wrongful act. See Amphion, Inc. v. Buckeye Elec. Co., 285 F. Supp. 2d 943, 949 (E.D. Mich. 2003) (citing Am. Council of Certified Podiatric Physicians and Surgeons v. Am. Bd. of Podiatric Surgery, Inc., 185 F.3d 606, 624 (6th Cir. 1999)). In Amphion, the district court concluded that the making of false statements in a complaint constitutes unethical conduct. Taking the allegations in the complaint as true, the same would apply to reporting false complaints about El-Khalil's competency as a doctor.

Defendants also contend that El-Khalil failed to adequately plead the remaining elements, but the Court disagrees. The complaint makes clear that El-Khalil had the benefit of receiving many professional consultations as a result of his privileges (satisfying element one); that Moving Defendants also had privileges at DMC and concocted a scheme to deprive El-Khalil of his privileges (and, necessarily, the benefits that accompany the privileges, satisfying element two); and that he suffered damages as a result of losing his privileges (satisfying element four).

Accordingly, the Court denies Moving Defendants' motions as they relate to the tortious-interference claim.[5]

---

[5] While the Court could dismiss the state-law tortious-interference claim for the reason that the case against Moving Defendants loses its federal character with the dismissal of the FCA retaliation claims, the Court determines that the values of judicial economy, convenience, and

## IV. CONCLUSION

For these reasons, Moving Defendants' motions (Dkts. 39, 41, 42) are granted as they relate to the retaliation and conspiracy claims, and are denied as they relate to the tortious-interference claim.[6]

SO ORDERED.

Dated: May 31, 2019      s/Mark A. Goldsmith
    Detroit, Michigan      MARK A. GOLDSMITH
    United States District Judge

---

comity favor the Court maintaining supplemental jurisdiction because litigation will continue against both Defendant DMC and Defendant Tedeschi on both federal claims and the tortious-interference claim. Cf. Ciurleo v. St. Regis Parish, 214 F. Supp. 3d 647, 652 (E.D. Mich. 2016) ("In light of the fact that the parties have yet to even begin discovery, 'the values of judicial economy, convenience, fairness, and comity' dictate that this Court decline to retain supplemental jurisdiction over Plaintiff's state-law defamation claim.") (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).

[6] Defendant Khalil also included a motion for fees in his motion to dismiss. Khalil's motion is denied without prejudice; the motion for fees does not comply with E.D. Mich. L.R. 54.1.2, as it does not, for example, contain an explanation why Khalil is the prevailing party and it was not accompanied by an affidavit setting out in detail the number of hours worked.