# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ALI EL-KHALIL, D.P.M.,                                    Case No. 18-cv-12759-MAG-APP

                              Plaintiff,                  Judge Mark A. Goldsmith
v.                                                        Magistrate Judge Anthony P. Patti

ANTHONY TEDESCHI, MOHAMMED
KHALIL, NSIMA USEN, MAHMUD
ZAMLUT, LEONARD ELLISON, and THE
DETROIT MEDICAL CENTER, a Domestic
Not for Profit Corporation, jointly and severally,

                              Defendants.

---

## PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ENJOINING DEFENDANT, THE DETROIT MEDICAL CENTER, FROM MAKING ANY REPORT REGARDING THE STATUS OF PLAINTIFFS' MEDICAL STAFF PRIVILEGES WITH THE NATIONAL PRACTITIONER DATA BANK ("NPDB"), STATE OF MICHIGAN, AND OTHER REGULATORY AGENCIES AND AUTHORITIES

Plaintiff, ALI EL-KHALIL, by and through his attorneys, LAW OFFICES OF BEN M. GONEK, PLLC and THE MIKE COX LAW FIRM, PLLC, respectfully requests that the Court grant the Plaintiff a temporary restraining order and preliminary injunction enjoining the Defendant, The Detroit Medical Center ("DMC"), from reporting that Plaintiff's staff privileges at the DMC were suspended

or not renewed or that any other adverse action was taken with regard to Plaintiff's professional standing, to the National Practitioner Data Base, the State of Michigan Department of Health and Human Services, and all other regulatory agencies and authorities.

1.      The undersigned counsel certifies that he personally spoke to, or met with, opposing counsel, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief; opposing counsel expressly denied concurrence.

2.      The undersigned counsel certifies that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

3.      The detailed facts and arguments supporting this motion are set forth in Plaintiff's accompanying brief and the attached Exhibits A-M, including the Affidavit of Plaintiff, which is attached as Exhibit B.  The following chronology shows the DMC's pattern of retaliation against Plaintiff:

**Date:**              **Event:**

2008                    DMC first grants Plaintiff staff privileges

| Date: | Event: |
|---|---|
| 2010-2016 | DMC renews Plaintiff's privileges every 2 years |
| 2016-2017 | Plaintiff reports Defendants' fraud to the FBI |
| 10/2017 | Khalil, Usen, and Zamlut find out about Plaintiff's reporting and threaten him.  Zamlut threatens to get Plaintiff kicked out of the DMC |
| 10/10/2017 | Khalil assaults Plaintiff in a gas station parking lot |
| 11/30/2017 | Khalil verbally assaults and threatens to kill Plaintiff at the DMC |
| 12/14/2017 | DMC emails Plaintiff to confirm his privileges remain in good standing and will be renewed |
| 1/8/2018 | Plaintiff's counsel informs DMC in writing of Plaintiff's fraud reports to FBI and Defendants' efforts to get him kicked out of DMC |
| 1/22/2018 | DMC suspends Plaintiff's privileges and does not give Plaintiff the reason |
| 3/20/2017 | DMC CEO gives Plaintiff written notices his privileges will not be renewed, and plaintiff subsequently appeals to DMC appeal committee |
| 9/27/2018 | Plaintiff files this lawsuit |
| 12/17/2018, 2/12/2019 | DMC Hearing panel hears evidence on Plaintiff's appeal |
| 3/4/2019 | DMC delivers Report and Recommendation reversing DMC decision not to renew Plaintiff's privileges because prior decision was "incorrect, not justified, unreasonable, arbitrary, and not substantiated by the evidence," and because the DMC was retaliating for Plaintiff's fraud reports.  Appeal completed. |

| Date: | Event: |
|---|---|
| 4/26/2019 | DMC's Joint Conference Committee disregards DMC bylaws to overrule DMC's own fact-finding body without hearing any evidence or giving any reasons and rules against Plaintiff |
| 5/3/2019 | DMC notifies Plaintiff of JCC action |
| 5/21/2019 | Plaintiff appeals JCC decision to DMC's governing body, which delegates appeal to Ad Hoc Appeal Committee |
| 1/9/2020 | Ad Hoc Appeal Committee issues report recommending non-Renewal but fails to notify Plaintiff |
| 4/24/2020 | DMC Governing Body accepts Ad Hoc Appeal Committee's recommendation and refuses to renew Plaintiff's privileges, exhausting Plaintiff's administrative remedies |
| Imminent | DMC will send written notice of its adverse decision to the NPDB and  Michigan DHHS of its adverse decision, providing public notice, exacting final retaliation and ruining Plaintiff's reputation and career |

## Request for Relief

For the reasons set forth in Plaintiff's accompanying brief, Plaintiff has shown that he is entitled to a temporary restraining order and preliminary injunction enjoining the DMC from reporting to the NPDB and other regulatory authorities. Plaintiff therefore respectfully requests that the Court: (a) schedule an emergency hearing on Plaintiff's motion; (b) enter a temporary restraining order and a preliminary injunction enjoining the DMC and its Governing Body, officers, employees, and agents from submitting a report concerning the non-

renewal of Plaintiff's staff privileges or other adverse action against Plaintiff, to the NPDB, the State of Michigan and all other regulatory agencies and authorities to preserve the status quo and prevent irreparable harm to Plaintiff.

Respectfully submitted,

/s/ Ben M. Gonek                                    Dated: April 27, 2020
Ben M. Gonek (P43716)
BEN GONEK LAW, P.C.
Attorneys for the Plaintiff
14290 Northline Rd.,
Southgate, MI 48195
Telephone: (313) 963-23377


/s/ Michael A. Cox                                  Dated: April 27, 2020
Michael A. Cox (P43039)
Victor J. Torres (P43240)
Donald J. Hutchinson (P39545)
THE MIKE COX LAW FIRM, PLLC
Attorneys for the Plaintiff
17430 Laurel Park Drive, Suite 120 E
Livonia, MI 48152
Telephone: (734) 591-4002

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ALI EL-KHALIL, D.P.M.,              Case No. 18-cv-12759-MAG-APP

           Plaintiff,        Judge Mark A. Goldsmith

v.                          Magistrate Judge Anthony P. Patti

ANTHONY TEDESCHI, MOHAMMED
KHALIL, NSIMA USEN, MAHMUD
ZAMLUT, LEONARD ELLISON, and THE
DETROIT MEDICAL CENTER, a Domestic
Not for Profit Corporation, jointly and severally,

           Defendants.

---

**BRIEF IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION
FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY
INJUNCTION ENJOINING DEFENDANT, THE DETROIT MEDICAL
CENTER, FROM MAKING ANY REPORT REGARDING THE STATUS
OF PLAINTIFFS' MEDICAL STAFF PRIVILEGES WITH THE
NATIONAL PRACTITIONER DATA BANK ("NPDB"), STATE OF
MICHIGAN, AND OTHER REGULATORY AGENCIES AND
AUTHORITIES**

## STATEMENT OF THE ISSUE PRESENTED

Plaintiff is a podiatrist who for 10 years had staff privileges with the Defendant, The Detroit Medical Center ("DMC"), which allowed Plaintiff to visit and treat his patients at the DMC.  On Friday, April 24, 2020, at 4:42 p.m., the undersigned counsel for the Plaintiff received an email message (**Exhibit A**) from Roger Meyers, counsel for the DMC, stating that the Governing Body of the DMC met that afternoon and decided not to renew Plaintiff's staff privileges with the DMC.

This action caps off a series of efforts by the Defendants, starting in 2017, to remove Plaintiff's staff privileges to retaliate against Plaintiff for his reporting suspected healthcare fraud in 2016 by other DMC staff doctors in violation of the federal False Claims Act, 31 U.S.C. § 3730(h).  The DMC is on the verge of reporting its non-renewal of Plaintiff's staff privileges to the National Practitioner Data Bank ("NPDB"), the Michigan Department of Health and Human Services ("DHHS"), and possibly other regulatory authorities.  The NPDB will then provide notice to other hospitals, medical providers, insurance providers and other third-party payors, and other members of the public of the DMC's adverse action against Plaintiff.  This would permanently cripple Plaintiff's ability to practice medicine and serve his current or future patients.  The reporting will have an immediate, devastating, irreversible, and permanent effect on Plaintiff's reputation, cripple his

ability to practice medicine in the future, and end his ability to serve current or future patients.

Should the Court grant the Plaintiff a temporary restraining order and preliminary injunction to enjoin the DMC's reporting of non-renewal of Plaintiff's staff privileges to the NPDB, the Michigan DHHS, and other regulatory authorities?

Plaintiff says: Yes.

## STATEMENT OF THE CONTROLLING OR MOST APPROPRIATE AUTHORITIES FOR THE RELIEF SOUGHT

**Standards for granting a temporary restraining order and preliminary injunction:**

Fed.R.Civ.P. 65

*Workman v. Bredesen*, 486 F.3d 896, 922 (6th Cir.2007)

*Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226 (6th Cir.1996)

*Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 564-565 (6th Cir. 1982)

*Black v. Cincinnati Fin. Corp.*, No. 1:11–CV–210, 2011 WL 1640962 (S.D. Ohio May 2, 2011)

**Likelihood that Plaintiff will prevail on the merits on his claims against the DMC under the federal False Claims Act:**

31 U.S. C. § 3730(h)

*U.S. ex rel. Marlar v. BWXTY-12, L.L.C.*, 525 F.3d 439 (6th Cir. 2008)

*McNamara v. Holzer Health Systems*, 630 Fed.Appx. 394 (6th Cir. Nov. 2, 2015)

*Ickes v. Nexcare Health Sys., L.L.C.,* 178 F. Supp. 3d 578 (E.D. Mich. 2016)

*Mikhaeil v. Walgreens, Inc.*, Case No. 13-14107, 2015 WL 778179 (E.D. Mich. Feb. 24, 2015)

**Whether Plaintiff will suffer irreparable harm if the DMC is not enjoined from reporting:**

*Walker v. Mem. Health Sys. of East Texas*, 231 F.Supp.3d 210, 216 (E.D. Tex. 2017)

*Schneider v. Flood,* Case No. 2010-41; 2010 WL 1657001 (D.V.I. Apr. 23, 2010)

*Doe v. Cmty. Med. Ctr., Inc.*, 353 Mont. 378, 391, 221 P.3d 651 (2009)

## Introduction

The Plaintiff brought this case on September 5, 2018 to remedy the Defendants' retaliation against Plaintiff for his reporting federal health care fraud by other staff doctors at the DMC to federal law enforcement authorities by suspending and refusing to renew Plaintiff's staff privileges at the DMC.   The DMC has continued its retaliatory and illegal efforts to deny Plaintiff the renewal of his privileges, despite the fact that the DMC's *own* Hearing Panel—the only body that actually heard the evidence presented against Plaintiff and found facts as the sole fact-finding body designated by the DMC—unequivocally concluded that there was no evidence supporting the termination and non-renewal of Plaintiff's privileges and noted that " ███████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████████"[1]

Based on the DMC's action on Friday, April 24, 2020, to deny renewal of Plaintiff's privileges, Plaintiff requests entry of a temporary restraining order and a preliminary injunction, pursuant to the authority of Fed.R.Civ.P. 65, immediately enjoining the DMC and its Governing Body, officers, employees and agents, against

---

[1]    See **Exhibit I**, DMC Hearing Panel's Report and Recommendation, p. 5.

reporting the decision not to renew Plaintiff's staff privileges to the NPDB, State of Michigan, and any other regulatory agency or authority, to prevent the Plaintiff from suffering imminent and irreparable harm, including depriving Plaintiff of his livelihood and reputation as a licensed podiatrist. In this manner, Plaintiff merely seeks preservation of the current status quo until this Court's ultimate determination of the merits of Plaintiff's claims in this case.

### Statement of Facts

**The Plaintiff had good standing in the medical community before Defendants attacked him.**

Plaintiff is a podiatrist licensed to practice in the State of Michigan and has had full staff privileges at the DMC since 2008, which were renewed every two years without incident until Plaintiff reported fellow DMC doctors were violating the Federal False Claims Act to the Federal Bureau of Investigation ("FBI"). Plaintiff also currently has staff privileges at Garden City Hospital and Henry Ford Wyandotte Hospital.

From 2008 until the present, Plaintiff has never had any malpractice or other patient complaint filed against him growing out of practice at the DMC or any other health care institution. Nor has the MI Department of Licensing and Regulatory Affairs ("LARA") ever received any complaint against him.  Plaintiff never had any complaints lodged against him at the other hospitals where he currently has privileges, neither Henry Ford Hospital Wyandotte nor Garden City Hospital.

**Exhibit B**, Affidavit of Plaintiff, ¶¶ 1-5, pp. 1-2.

**The Plaintiff reported Defendants' health care fraud to the FBI.**

Beginning in late 2016 Plaintiff spoke and met on several occasions with federal authorities, including Andrew Crump, Special Agent for the Federal Bureau of Investigation, to report suspected billing fraud on the federal government in violation of the False Claims Act, 31 U.S.C. § 3729, by certain of the individual defendants in this case, including Defendants Mohammed Khalil, Nsima Usen, Mahmud Zamlut, and Leonard Ellison. **Exhibit B**, Affidavit of Plaintiff, ¶ 6, pp. 2-3. These meetings took place between late 2016 and early 2017. *Id.* The fraudulent acts reported by Plaintiff include those identified in the Affidavit of Plaintiff, **Exhibit B**, ¶ 7, pp. 3-12, and include fraudulent billing, patient treatment, and other nefarious practices.

**The DMC and individual Defendants retaliated against Plaintiff.**

Defendants Khalil, Usen, and Zamlut learned that Plaintiff reported the suspected health care fraud involving Medicare monies to Federal authorities and specifically threatened Plaintiff that he "would be sorry for doing so." **Exhibit B**, Affidavit of Plaintiff, ¶ 9, p. 13. These threats were made repeatedly. Defendant Zamlut approached Plaintiff in October, 2017 and told Plaintiff that Zamlut was going to get him "kicked out of the DMC for helping another person, Dr. Chadi Saad, report Zamlut's bad acts to the FBI." **Exhibit B**, Affidavit of Plaintiff, ¶ 9, p. 13.

In further retaliation, Defendant Khalil physically assaulted Plaintiff at a gas station at Ford and Telegraph Roads in Dearborn Heights on October 10, 2017. After approaching Plaintiff's vehicle, Khalil punched the Plaintiff in the face several times with a closed fist through the Plaintiff's open car window. **Exhibit B**, Affidavit of Plaintiff, ¶ 10, p. 13. Plaintiff made a police report to the local police on the day of the assault. **Exhibit C**.

Subsequently, on November 30, 2017, Defendant Khalil verbally assaulted Plaintiff at the DMC and threatened to harm Plaintiff physically, to kill Plaintiff, and to harm Plaintiff's family. **Exhibit B**, Affidavit of Plaintiff, ¶ 11, pp. 13-14. Plaintiff filed a petition for a personal protection order against Defendant Khalil with the Wayne County Circuit Court, which the Circuit Court granted on the same day. **Exhibit D**.

Since this time, Defendants Khalil and Usen have conspired working through and/or with the DMC to have Plaintiff's privileges at the DMC terminated by orchestrating false complaints against him. **Exhibit B**, Affidavit of Plaintiff, ¶ 12, p. 14.

## The DMC's retaliation against Plaintiff

On December 14, 2017, Plaintiff received email correspondence from Deborah Freeman, a DMC credentialing specialist (**Exhibit E**), confirming that his staff privileges are in good standing and that he would receive a letter within a month

notifying him that he was through the re-appointment process and would be reappointed for the next 2 years.

On January 7, 2018, Dr. Aaron Maddox, on behalf of the DMC, called Plaintiff about the renewal of Plaintiff's privileges at the DMC. Plaintiff's counsel responded to the call on January 8, 2018 by letter to Dr. Maddox asking him to call counsel with any questions rather than Plaintiff. (**Exhibit F**). The January 8, 2018 letter informed Dr. Maddox:

> Dr. El-Khalil is concerned that Dr. Mohamed Khalil, D.P.M., Dr. Mahmud Zamlut and/or Dr. Mahir Elder, M.D., may be attempting [to interfere] with his privileges being renewed at DMC/Harper Hospital. Dr. El-Khalil has a personal protection order against Dr. Khalil (Wayne County Circuit Court Case No. 17-114338PH) due to Dr. Khalil assaulting Dr. El-Khalil outside of the hospital. There is a video of the assault. *Dr. Khalil was one of the individuals that Dr. El-Khalil reported to the Federal Government for healthcare fraud. One of the issues also dealt with unnecessary referrals between Dr. Elder and Dr. Khalil as well as Dr. Zamlut and Dr. Khalil.*

**Exhibit F**, p. 2 (emphasis added). Counsel sent a copy of the letter to Defendant, Tedeschi, as the CEO of the DMC, and to Special Agent Andrew Crump, the FBI agent to whom Plaintiff previously reported the suspected fraud of Defendants on the federal government. Defendant Tedeschi took notice of the January 8 letter and forwarded it to counsel for the DMC, Frances Fenelon. **Exhibit M**, p. 10 of 10.

Just two weeks later, on January 22, 2018, the Plaintiff attempted to see his patients at the DMC. DMC staff told him that his privileges were suspended and to contact Dr. Bryan Little, the head of the DMC orthopedics department. Dr. Little told Plaintiff that his staff privileges had been suspended and would not be renewed.

Little refused to provide any explanation for the suspension. He only told Plaintiff that Plaintiff would be getting something in the mail. **Exhibit B**, Affidavit of Plaintiff, at ¶ 15, pp. 14-15.

As a result, Plaintiff's counsel sent an email to Dr. Little (with a copy to DMC attorney Fenelon), informing him:

> It is my understanding that you are chairing a committee reviewing Dr. El-Khalil's privileges at DMC. It is my further understanding that based on your conversation with Dr. El-Khalil the renewal of Dr. El-Khalil's privileges were tabled and suspended due to a complaint(s) made by Dr. Khalil. Dr. El-Khalil has reported Dr. Khalil and his group to the Department of Justice for Medicare fraud and other illegal practices. Dr. Khalil is aware that Dr. El-Khalil has provided the federal authorities with information concerning fraudulent billing practices and performing unnecessary medical procedures at DMC as well as other hospitals. As such, I am sure that is what triggered the complaint(s) made by Dr. Khalil. I have attached a video which depicts a portion of the attack. I have also attached a copy of a personal protection order issued by a Wayne County Circuit Court Judge against Dr. Khalil. I have also attached a copy of the letter sent to Dr. Maddox.

**Exhibit M**, p. 6 of 10. In a follow-up email to Fenelon, on February 1, 2018, Plaintiff's counsel summarized in some detail the fraud committed by Defendants and their associates on the federal government's Medicare and/or Medicaid programs. **Exhibit M**, p. 1.

Nearly two months later, on March 20, 2018, Defendant Tedeschi sent a letter to Plaintiff officially notifying him that his staff privileges would not be renewed. **Exhibit G.** Tedeschi did so with full knowledge that Plaintiff reported Defendants' healthcare fraud to the federal authorities, to Tedeschi, to Dr. Little, and to the DMC's attorney, Fenelon. Tedeschi's letter described the non-renewal as a decision

made by the DMC's Medical Executive Committee ("MEC") by vote at a meeting held on March 19, 2018. The letter disingenuously identified the reason for the MEC's belated decision as, "your pattern of disruptive and aggressive behavior reflect a lack of the judgment, ethics, professionalism, and ability to work with others that are required and expected of DMC Medical Staff members," *but predictably did not identify specific alleged disruptive behavior that formed the basis for the MEC's decision*. The letter also advised the Plaintiff of his right, under Article XII of the DMC's Medical Staff Bylaws,[2] to appeal the MEC's decision to a "Review Committee" appointed by Defendant Tedeschi. **Exhibit G**, p. 1. The also letter threatened to report a change in Plaintiff's privileges to the NPDB. *Id*. at p. 3.

## The DMC's own trial court ruled in Plaintiff's favor.

Plaintiff did appeal the MEC's decision not to renew his privileges to the DMC's Review Committee. The committee's Hearing Panel—which is the DMC's designated fact-finding body—held a two-day hearing, conducted on December 17, 2018 and February 12, 2019, which included the submission of testimony and evidence by both Plaintiff and the MEC. After the conclusion of the hearing, the Hearing Panel issued its Report and Recommendation, **Exhibit I**, on March 4, 2019.[3]

---

[2]      The Bylaws are attached as **Exhibit H**.

[3]      Art. XII, § 4(D) of the Bylaws, **Exhibit H**, provide that the substance of the information covered in the hearings and reviews conducted under the Bylaws (and all types of proceedings ancillary or preparatory thereto) are required to be kept

The Report and Recommendation *reversed* the MEC's decision not to renew Plaintiff's staff privileges at the DMC. **Exhibit I**, p. 5. Notably, the Hearing Panel concluded:



**Exhibit I**, p. 5 (emphasis added).

The members of the *DMC* Review Panel were the *only* persons and tribunal who heard the evidence presented by both sides (the DMC's prosecutors and Plaintiff) and unanimously decided the MEC's decision not to renew Plaintiff's staff privileges was ███████████████████████████████████ ████████████████ Further, the last sentence of the Review Panel's Report and Recommendation (quoted above) specifically notes Plaintiff's prior reports of health care fraud to federal government. The Review Panel reasonably concluded that the

___

confidential pursuant to the Michigan Public Health Code. Accordingly, Plaintiff will file a separate motion to file **Exhibit I**, the Hearing Panel's report and recommendation under seal.

MEC's decision not to renew Plaintiff's staff privileges was in retaliation for Plaintiff's prior fraud reports.

The Hearing Panel specifically found that the "disruptive behavior" cited as a basis by the MEC to deny the renewal of Plaintiff's privileges does not prove disruptive of patient care. **Exhibit I**, March 4, 2019 Hearing Panel Report and Recommendation, p. 4. The two instances of alleged disruptive behavior cited by the MEC are the October 10, 2017 incident where Khalil physically assaulted Plaintiff at the gas station and the November 30, 2017 incident where Khalil verbally assaulted Plaintiff at the DMC. *Id*. The first was not disruptive of patient care because Khalil physically assaulted Plaintiff and it did not occur in a hospital setting. The second was not disruptive of patient care because the video of the incident ███

████████████████████████████████████████████████████████████████

████████████████████████████ *Id.*

On March 22, 2019, the DMC sent Plaintiff a letter (**Exhibit J**) advising him that the MEC had decided to reverse its prior decision and would renew Plaintiff's staff privileges at the DMC. **Exhibit I**, p. 1.

**The DMC continues its pattern of illegal retaliation by violating its own bylaws to appeal an adverse decision made by the Hearing Panel.**

It is important to note that Article XII, § 8(A) of the Bylaws, **Exhibit H**, p. 34-35, grants an appeal right only to "the affected individual," meaning Plaintiff. The Bylaws grant no appeal right to the DMC if the MEC's decision is favorable to

the affected individual, as it was here.

Nevertheless, the DMC continued its retaliatory measures against Plaintiff in disregard of *its own* Bylaws. On May 3, 2019, the DMC sent Plaintiff another letter, this time advising him that the DMC's Joint Conference Committee ("JCC") had voted on April 26 to deny Plaintiff's renewal of privileges, "based upon facts and circumstances that gave rise to the MEC's initial decision and which were presented to the Review Committee." **Exhibit K**, p. 1.

This May 3, 2019 letter, which purposely ignored the Hearing Panel's findings, came out of the blue. Again, there is no provision in the Bylaws authorizing the JCC to reverse the decision of the MEC to reinstate Plaintiff's staff privileges or authorizing the DMC to take any further appeals of the MEC decision. Nor is there any provision allowing the JCC to conduct its own review and reconsideration of the evidence presented to the Hearing Panel or allowing the JCC to vote on reappointment to the DMC's medical staff.

Plaintiff followed up on the May 3, 2019 letter by submitting his appeal of the JCC's decision to the DMC's Governing Body on May 21, 2019. **Exhibit L**. Nothing further happened for months until April 24, 2020.  The DMC's counsel, Roger Meyers, emailed Plaintiff's counsel at 4:42 p.m. on Friday, April 24, 2020 to report that the DMC's Governing Body had already voted *that afternoon* not to renew Plaintiff's privileges.  *Id.*, p. 1.

It is outrageous that the DMC never notified Plaintiff of the Ad Hoc Appeals Committee report until 4:42 p.m. on April 24, 2020 (it was signed on *January 9, 2020) and* while this litigation was pending.  But, of course, it is an extralegal attempt to undermine this case before the merits have been addressed by the Court or a jury.

The DMC will now notify the Michigan DHHS of its decision not to renew Plaintiff's staff privileges pursuant to M.C.L. § 333.20175 and also give notice also to the NPDB pursuant to 42 U.S.C. § 11133(a)(1)(A) and could do so immediately. This would permanently destroy Plaintiff's reputation and ability to practice his chosen profession. **Exhibit B**, Affidavit of Plaintiff, ¶ 25, p. 17.

**Harm to Plaintiff if injunctive relief is not granted**

The non-renewal of Plaintiff's DMC staff privileges will interfere with Plaintiff's ability to visit and treat patients at the DMC and to bill appropriately for treatment. **Exhibit B**, Affidavit of Plaintiff, ¶ 23, p. 17. From 2008 until the present time, Plaintiff has never had *any* type of complaint leveled against him by any patient while having staff privileges at the DMC. Plaintiff has never had any LARA investigations or administrative complaints by any state agency. *Id.* at ¶ 4, p. 2. Plaintiff has staff privileges at Henry Ford Wyandotte and Garden City Hospital and has never had any complaints lodged against him at either Henry Ford Hospital Wyandotte or Garden City Hospital either. *Id.* at ¶¶ 3, 5, p. 2.

The DMC's filing of an adverse action report with the NPDB and the Michigan DHHS will impose severe consequences on Plaintiff. First, this filing is clearly a malicious attempt to defame the plaintiff personally, his professional reputation, and his business reputation because the purported basis for the filing is directly contradicted by the DMC's own fact-finding panel. Second, once done, the filling will destroy plaintiff's career, and can never be undone—it is irreparable. Third, to the extent it can be slightly mitigated, it will cost Plaintiff hundreds of hours in personal involvement and hundreds of thousands of dollars in legal fees to answer the necessary questions that will be posed by Garden City and other hospitals' credentialing committees which will be forced to act by the DMC's malicious listing.  Further, if Plaintiff seeks affiliations or privileges at any other future hospitals, this malicious stain will follow him.  **Exhibit A**, Affidavit of Plaintiff, ¶ 16-17,

Fourth, this will likely lead to more costs to respond to an investigation by the MI Department of LARA. Fifth, this will impair plaintiff's ability to serve his current patients who may now not be able to avail themselves of DMC privileges.  Plaintiff will have to discontinue longtime relationships to ensure proper care of his patients who may need the DMC.  Sixth, it is an underhanded attempt to go around this court and achieve success here by imposing costs on Plaintiff to undermine his ability to prosecute his case.  Further, the Michigan Board of Medicine will be directly notified

of the NPDB report and must initiate its own investigation. Malpractice insurers will view Plaintiff as a greater risk, which will result in financial strain as Plaintiff's premiums increase. Plaintiff will be required to disclose the report when renewing or applying for participation with health insurers, managed care entities and other payers. Negative NPDB reports against Plaintiff will be a stain on his professional records for his entire career. An adverse action report filed by a hospital is treated far more harshly than other reports made to the NPDB (e.g. a report of a payment by an insurer in settlement of malpractice allegation). *Id.* at ¶ 25, p. 17. Without injunctive relief, Plaintiff will suffer irreparable harm.

**The DMC's filing of a report with the NPDB and the resulting irreparable harm to Plaintiff is imminent.**

On April 27, 2020, the DMC's counsel confirmed that the DMC intends to file a report with the NPDB, asserted that such reporting is required by law, and refused to concur in the relief requested in this motion.

## Argument

### I.    Plaintiff meets the appropriate standard for a preliminary injunction

Rule 65 of the Federal Rules of Civil Procedure permits a party to seek injunctive relief if he believes he will suffer irreparable harm or injury during the pendency of the action. Fed.R.Civ.P. 65. A temporary restraining order "is meant to preserve the status quo until a court can make a reasoned resolution of a dispute." *Black v. Cincinnati Fin. Corp.*, No. 1:11–CV–210, 2011 WL 1640962, at *1 (S.D.

Ohio May 2, 2011) (citing *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226 (6th Cir.1996)). A temporary restraining order may be issued without notice to the adverse party and is of short duration (generally no more than fourteen days), tending to terminate with a ruling on a preliminary injunction. *Id.* (citing *Workman v. Bredesen*, 486 F.3d 896, 922 (6th Cir.2007)); Fed.R.Civ.P. 65(b). If a defendant is on notice, however, a request for a temporary restraining order may be treated as a motion for a preliminary injunction. *Id.*; Fed.R.Civ.P. 65(a)(1).

Under the Sixth Circuit standard, the Court is required to consider the following four factors in assessing a motion for a TRO and preliminary injunction:

(1)   Whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits;

(2)   Whether the plaintiff has shown irreparable injury;

(3)   Whether the issuance of a preliminary injunction would cause substantial harm to others; and

(4)   Whether the public interest would be served by issuing a preliminary injunction.

*Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 564-565 (6th Cir. 1982). Plaintiff's request for a temporary restraining order and preliminary injunction satisfies each of these factors.

## II.      The Plaintiff will prevail on the merits.

Plaintiff's amended complaint alleges that the DMC's decision to suspend and not to renew Plaintiff's staff privileges was made in violation of the False Claims

14

Act. The False Claims Act prohibits persons from knowingly presenting false claims to the federal government. 31 U.S.C. § 3729(a)(1). The Act further prohibits the DMC from retaliating against an employee, contractor, or agent "because of lawful acts done by the employee, contractor, agent or associated others in furtherance of … efforts to stop 1 or more violations of this subchapter," 31 U.S.C. § 3730(h)(1). The whistleblower reports made by Plaintiff to the federal government and to the DMC's CEO are protected acts under this provision. *McNamara v. Holzer Health Systems*, 630 Fed.Appx. 394, 399 (6th Cir. Nov. 2, 2015); *Ickes v. Nexcare Health Sys., L.L.C.,* 178 F. Supp. 3d 578, 593-94 (E.D. Mich. 2016).

To establish a claim for retaliation under the False Claims Act anti-retaliation provision, Plaintiff has to show: (1) that Plaintiff was engaged in protected activity; (2) that the DMC knew that Plaintiff was engaged in protected activity; and (3) the DMC discharged or discriminated against Plaintiff as a result of Plaintiff's protected activity. *U.S. ex rel. Marlar v. BWXTY-12, L.L.C.*, 525 F.3d 439, 449 (6th Cir. 2008); *Mikhaeil v. Walgreens Inc.*, Case No. 13-14107; 2015 WL 778179, *6 (E.D. Mich. Feb. 24, 2015).

### A.       The Plaintiff was engaged in protected activity.

The Plaintiff's whistleblower reports to the federal government are clearly protected activity under the False Claims Act, because Plaintiff was asserting, and reasonably and in good faith believed, that Defendants were defrauding the federal

government. *Jones-McNamara v. Holzer Health Systems*, 630 Fed.Appx. 394, 398-400 (6th Cir. 2015); **Exhibit B**, Affidavit of Plaintiff, ¶ 6, pp. 2-3.

### B.        The DMC knew Plaintiff was engaged in protected activity.

Plaintiff specifically notified the DMC's CEO, Defendant Tedeschi, in writing, on January 8, 2018 that Defendants were presenting false claims to the federal government for payment. **Exhibit F**, p. 2. The DMC's own attorney, Fenelon, received the same letter on or before January 10, 2018. **Exhibit M**, p. 10. This occurred *before* the DMC suspended Plaintiff's privileges and the DMC's agent, Dr. Little, informed the Plaintiff by telephone on January 22, 2018 that his privileges were suspended and would not be renewed, and before the DMC's MEC formally voted at meeting on March 19, 2018 not to renew Plaintiff's staff privileges. **Exhibit G**, p. 1.

### C.    The DMC terminated Plaintiff's privileges because the Plaintiff reported the healthcare fraud.

The DMC Hearing Panel's findings and conclusions prove this: the DMC's removal of privileges, and more importantly, plan to report Plaintiff, is clear retaliation for his lawful activity  The timing and sequence of events is proof that Defendant DMC suspended and decided not to renew Plaintiff's privileges in retaliation for Plaintiff's reporting Defendants' Medicare fraud. *Ickes v. Nexcare Health Systems, L.L.C.*, 178 F.Supp.3d 578, 596 (E.D. Mich. 2016); *Mikhaeil v. Walgreens Inc.*, Case No. 13-14107, 2015 WL 778179, at *9 (E.D. Mich. Feb. 24,

2015). The DMC suspended Plaintiff's privileges on January 22, 2020, just 2 weeks after Plaintiff's counsel notified the DMC in his January 8, 2020 letter (**Exhibit F**) that Plaintiff reported the healthcare fraud to the federal government, without ever giving him the specific reasons for his suspension and non-renewal.  Even the DMC's own Hearing Panel—the only body that actually heard the evidence against Plaintiff—surmised that Plaintiff's privileges were not renewed because of his whistleblowing. **Exhibit I**, Hearing Panel Report and Recommendation, p. 5 (███

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████).   The Review Committee further concluded that the "disruptive behavior" cited as a basis by the MEC to deny the renewal of Plaintiff's privileges ███████████████████

████████████  *Id.*, p. 4.

Further proof of the DMC's retaliation is that the DMC intends to go ahead with the NPDB reporting even though the non-renewal of Plaintiff's privileges is a non-reportable event because it does not relate to Plaintiff's competence or professional conduct that affects or could affect the health or welfare of a patient. An action by a hospital affecting the doctor's clinical privileges is reportable to the

NPBD only if it is based on a "professional review action," 42 U.S.C. § 11133(a)(1)(A), and based on the doctor's competence or professional conduct "that adversely affects, or could affect the health or welfare of a patient or patients" 42 U.S.C. § 11151(9); 45 C.F.R. 60.3 (**Exhibit O**), NPBD Guidebook, pp. E-31; *Costa v. Leavitt*, 442 F.Supp.2d 754, 772 (D. Neb. 2006). In this case, Plaintiff's alleged "disruptive conduct" did not. **Exhibit I**, March 4, 2019 Hearing Panel Report and Recommendation, p. 4. False reporting to the NPDB is actionable defamation. *Miller v. Huron Regional Medical Center, Inc.*, 145 F.Supp.2d 873, 886 (D.S.D. 2015), aff'd after trial, 936 F.3d 841 (8th Cir. 2019). Further, if Plaintiff does prevail on the merits, § 3730(h)(1) authorizes the Court to grant all relief necessary to make Plaintiff whole, and § 3730(h)(2) specifies that the relief "shall include reinstatement." If Plaintiff prevails in this Court, Plaintiff's privileges will be reinstated, and there will be nothing for the DMC to report to the NPDB or state authorities.

**III.      Plaintiff will be irreparably harmed if the Court denies the requested injunctive relief.**

Plaintiff will suffer irreparable harm, as discussed at length above, and as detailed in Plaintiff's Affidavit **(Exhibit A)**, ¶¶ 24-25, pp. 17-18. Other courts have found in similar circumstances that negative reports to the NPDB associated with the loss of privileges constitutes irreparable harm. *Walker v. Mem. Health Sys. of East Texas*, 231 F.Supp.3d 210, 216 (E.D. Tex. 2017); *Schneider v. Flood,* Case No.

2010-41; 2010 WL 1657001, at *2 (D.V.I. Apr. 23, 2010). In *Doe v. Cmty. Med. Ctr., Inc.*, 353 Mont. 378, 391, 221 P.3d 651 (2009), the court found irreparable harm despite the fact that NPDB reports can be "voided" because, "[a]n erroneous report announcing to all interested parties that a physician is being investigated or suspended for unethical activity or impairment has the potential for immediate harm as well as permanent harm, even if later retracted." "[T]he fact is that a ringing bell cannot be unrung." *Doe*, 353 Mont. at 391.

**IV.    The DMC will not be harmed if a preliminary injunction is granted.**

The purpose of reporting is to provide a warning to other institutions and prevent practitioners from moving from institution to institution to avoid the consequences of their malpractice. The DMC receives no benefit from the reporting other than to further the DMC's retaliatory purpose. Accordingly, the irreparable harm that Plaintiff would suffer if injunctive relief is not granted outweighs any conceivable harm to the DMC if the injunction is granted.

**V.    The public interest weighs in favor of granting the requested injunction.**

The public is better served by encouraging Plaintiff and others in his position to report suspected Medicare and Medicare fraud to the government and to the hospitals where the fraud occurs, not to punish them for it. The False Claims Act itself encourages private parties to report fraud on the federal government and authorizes private parties to file *qui tam* actions on behalf of the government and

themselves to recover fraudulently induced payments. *See* 31 U.S.C. § 3730(b). On the other hand, it is *not* in the public interest to file false or erroneous reports with the NPDB and state authorities. *Doe v. Cmty. Med. Cent., supra*, 353 Mont. at 391; *Walker, supra*, 231 F.Supp.3d at 217. Nor is it in the public interest to deprive Plaintiff's patients from receiving treatment from the podiatrist they selected who has received no malpractice complaints for his treatment of patients. The public interest supports the injunction.

## Conclusion

For all these reasons, the Court should grant Plaintiff's request for a temporary restraining order and/or a preliminary injunction enjoining the DMC and its Governing Body, officers, employees, and agents from reporting the DMC's decision to suspend and not renew Plaintiff's staff privileges to the NPDB, the State of Michigan and any other regulatory agency or authority pending the Court's final determination of the merits of Plaintiff's claims in this case.

Respectfully submitted, counsel for the Plaintiff,

/s/ Ben M. Gonek
Ben M. Gonek (P43716)
BEN GONEK LAW, P.C.
14290 Northline Rd.,
Southgate, MI 48195
Telephone: (313) 963-3377

/s/ Michael A. Cox
Michael A. Cox (P43039)
THE MIKE COX LAW FIRM, PLLC
17430 Laurel Park Dr. N, Suite 120
Livonia, MI 48152
Telephone: (734) 591-4002

Dated: April 27, 2020

Dated: April 27, 2020

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 27, 2020, I electronically filed the foregoing document with the Clerk of the Court through the CM/ECF system, which will send notices of electronic filing to all counsel of record.

/s/ Mihaela Iosif
The Mike Cox Law Firm, PLLC
Livonia, MI 48152
