# EXHIBIT L

# BEN GONEK LAW, P.C.

**500 Griswold Street, Suite 2450**
**Detroit, Michigan 48226**
Telephone: (313) 963-3377
Facsimile: (313) 963-9310

**Ben M. Gonek**
**ben@goneklaw.com**

May 21, 2019

*VIA FACSIMILE, EMAIL, and FIRST-CLASS MAIL*

Mr. John Levy
C/O Mary Merity
Corporate Medical Affairs
Hutzel Building
4707 St. Antoine, Ste E510
Detroit, MI 48226

**Re:** *Dr. El-Khalil's Appeal of the JCC's Decision Denying Reappointment*

Dear Mr. Levy,

Enclosed please find a copy of Dr. El-Khalil's Appeal of the JCC's April 26, 2019 Decision denying Reappointment.

Please feel free to contact my office should you have any questions.

Very truly yours,

Ben M. Gonek
BMG/lrb
Enclosure

**DR. EL-KHALIL'S APPEAL OF THE JCC'S APRIL 26, 2019 DECISION
DENYING REAPPOINTMENT**

**ORAL ARGUMENT REQUESTED**

Dr. Ali El-Khalil is a board-certified podiatrist with no history of malpractice claims or negligent patient care issues who has been practicing for over a decade. Dr. El-Khalil has privileges at Henry Ford Hospital and Garden City Hospital. Dr. El-Khalil takes patient care issue seriously and also will not tolerate any type of billing related fraud by any health care professional or institution. Unfortunately, after Dr. El-Khalil, who had been on the DMC Medical Staff for ten years without any adverse history, reported several DMC physicians who were involved in horrific patient care and also involved in Medicare fraud, the Medical Executive Committee ("MEC") denied the reappointment of Dr. El-Khalil to the DMC Medical Staff[1].

Pursuant to the DMC By-laws, Dr. El-Khalil requested a Fair Hearing. Dr. Anthony Tedeschi, who has a history of tolerating horrific patient care and healthcare fraud, appointed a physician Dr. Mahmud Zamlut to the Hearing Panel/Review Committee. Dr. El-Khalil previously reported Dr. Zamlut to Dr. Tedeschi and Federal Authorities for perpetrating health care fraud. Dr. El-Khalil filed a Motion to disqualify Dr. Zamlut from the Hearing Panel/Review Committee and the motion was subsequently granted. Thereafter, a new Hearing Panel/Review

---

[1] A few of the physicians Dr. El-Khalil reported to Dr. Tedeschi for horrific patient care and billing fraud, i.e. Dr. Nsima Usen, Dr. Mohammed Khalil, and Dr. Muhmod Zamlud orchestrated false complaints against Dr. El-Khalil.

Committee Member was appointed, and a Fair Hearing was held on two separate days.

The Hearing Panel/Review Committee subsequently issued a Report and Recommendation. (See **Attachment A**). The undersigned cannot address the exhibits and testimony any better than the Hearing Panel/Review Committee did. In the Hearing Panel's Report and Recommendation, they addressed each allegation against Dr. El-Khalil as follows:

Allegation #1: Dr. Ali A. El-Khalil held himself out as an FBI agent.

Findings:       This allegation was denied by Dr. Ali A. El-Khalil. No evidence was provided by the MEC to back it, nor was it reported to any law enforcement agency.

Allegation #2: Dr. El-Khalil did consults that were not requested.

Findings:       Again, the MEC provided no evidence for this serious accusation that would potentially signify billing fraud. The Fair Hearing Panel considers such proof would be easy to obtain from the EMR and considers the absence thereof reflective of the lack of proper investigation and due process on the part of the MEC. During his testimony, Dr. Saad did confirm that both himself and his patient were looking for a second opinion from Dr. El-Khalil on a patient previously seen by Dr. Usen, who subsequently became upset and made the threatening and obscenity-laden phone call to Dr. Saad that the panel listened to during the hearing **(and which Dr. Usen denied under oath during his own testimony until he himself listened to the recording).**

Allegation #3: Dr. El-Khalil had problems with his behavior at various Oakwood hospitals.

Findings:       There is evidence that the DMC Medical Executive Committee had previously considered this information and had not deemed it serious enough to deny re-appointment. The information and its age do not prove a pattern of behavior. Additionally, the Hearing Panel was made aware of the numerous convictions that resulted from Dr. El-Khalil's whistleblowing at Oakwood facilities, some of which involve the very same physicians that denied his credentialing at that system, further rendering their accusations and actions irrelevant.

Allegation #4: General disruptive behavior with Dr. Mohammad Khalil.

Findings:      Again, no acceptable evidence was provided by the MEC. The panel found potential conflicts of interest in the letters of complaint submitted by the MEC. The panel finds significant contrast in relation to previous cases of denial of credentialing based on disruptive behavior, where solid, corroborated evidence from unbiased individuals was provided, as well as well-documented remediation options, warnings and ultimatums to the involved physician. The MEC did not offer any evidence that Dr. El-Khalil was contacted by his superiors, the Credentialing Committee or the MEC to discuss his allegedly disruptive behavior or to alert him of his impending non re-appointment. In fact, the only documented communication regarding this was an email unofficially (and incorrectly) confirming to Dr. El-Khalil that his privileges would be renewed. Although not cited by the MEC in their decision, the Panel reviewed the video recording of the gas station incident between the doctors. While both doctors acted in a less than admirable way, it showed Dr. Ali El-Khalil was physically assaulted by Dr. Khalil and did not fight back. Furthermore, it did not occur in a hospital setting and cannot therefore be considered disruptive of patient care. The video of the incident that did occur at Sinai-Grace Hospital only showed a short verbal altercation between two physicians that does not prove disruption of patient care. The MEC claimed that recording such video was unethical and possibly illegal. The Hearing Panel found it was neither.

Allegation #5: Dr. Ali El-Khalil made misstatements on his re-appointment application.

Findings:      The panel finds this omission irrelevant, as it was not mentioned by the MEC in their original decision, and yet it was introduced as evidence at the hearing. Regardless, the panel doubts that such an omission would justify a denial of privileges for other DMC physicians, raising the issue of arbitrarily.

The Hearing Panel was also asked to determine if the action of the Medical Executive Committee to recommend non re-appointment of Dr. Ali El-Khalil's privileges and membership was incorrect, not justified, unreasonable, arbitrary, or not substantiated by the evidence. The Hearing Panel in its Report unanimously found that it was **all of the above**, incorrect, not justified, unreasonable, arbitrary, and not substantiated by the evidence. The Hearing Panel in their report went on to state:

"Furthermore, the evidence presented at the hearing brought to light significant and unmanaged conflicts of interest at each step of the process and a consistent lack of proper investigation and due process on the part of the MEC. The panel is also concerned about the timing of events, finding it suspicious that since his initial appointment in 2008, Dr. El-Khalil's privileges and membership at the DMC were consistently renewed without any mention whatsoever of any

3

behavioral issues, and it wasn't until his accusations were made that the MEC found his behavior to be grounds for non-re-appointment."

Pursuant to Article XII, Section 6 of the DMC Medical Staff Bylaws, the Report and Recommendation of the Hearing Panel was then given to the MEC. Pursuant to Article XII Section 7 of the DMC Bylaws, the MEC voted to reinstate Dr. El-Khalil's privileges. (See **Attachment B**). On March 18, 2019, DMC sent a letter to Dr. El-Khalil advising him of the MEC's action.

Dr. El-Khalil obviously did not appeal the favorable Report and Recommendation from the Hearing Panel/Review Committee. Nor did Dr. El-Khalil appeal the favorable March 18, 2019 decision of the MEC restoring his medical privileges to the DMC Medical Staff. Dr. El-Khalil did not get any type of notice that any other body appealed the Hearing Panel's Report and Recommendation and/or the MEC's March 18, 2019 action.

However, on April 6, 2018, the DMC's Joint Conference Committee ("JCC") then took the unusual measure of reconsidering the evidence considered by the Review Committee and voted to deny Dr. El-Khalil reappointment to the medical staff. There are no provisions in the DMC By-laws that allow the JCC to reconsider the evidence before the Review Committee. There are also no provisions allowing the JCC to vote on Reappointment to the DMC Medical Staff. The Hearing Panel's Report and Recommendation and March 18, 2019 MEC Decision should have been

just submitted to the Governing Body for them to accept.  Article XII, Section 8(b) DMC Medical Staff Bylaws.

Following the JCC's unusual appellate review and vote which was contrary to the DMC By-laws, Dr. El-Khalil requested through counsel the names of individuals who took the unorthodox procedure to conduct a de novo review of the evidence presented before the Review Committee.  Counsel for the MEC declined to produce said names.  (See **Attachment C**).

Dr. El-Khalil was notified in the May 3, 2019 correspondence that he has a right to appeal.  Contrary to what Mr. Levy indicates in his May 3, 2019 letter the Detroit Medical Staff Bylaws do not give him that right at this juncture. Nevertheless, the Governing Body should reverse the JCC decision to deny the reappointment of Dr. El-Khalil to the DMC Medical Staff because: the DMC Bylaws do not give the JCC the right to vote upon reappointment nor does it give the JCC the right to reevaluate the evidence presented to the Hearing Panel/Review Committee.

5

## ARGUMENT ONE

THE JCC DOES NOT HAVE THE AUTHORITY TO DENY
REAPPOINTMENT TO DR. EL-KHALIL.

After the Favorable Report and Recommendation issued by the Hearing Panel
and the MEC's vote to reappoint Dr. El-Khalil to the Medical Staff, apparently the
Governing Body took the unorthodox position of allowing the JCC to make the
decision on whether Dr. El-Khalil should be reappointed.

As indicated above, after Dr. El-Khalil was notified on March 20, 2018 by the
MEC that his application for reappointment to the DMC Medical Staff had been
denied.  Dr. El-Khalil requested a Fair Hearing pursuant to DMC Medical Staff
Bylaws Article XII Section 1(B).  A Fair Hearing was conducted by a Hearing
Panel/Review Committee pursuant to DMC Bylaws Article XII Section 2.  The
Hearing Panel issued a Report and Recommendation pursuant to DMC Bylaws
Article XII, Section 6.  The Report and Recommendation was referred to the MEC
pursuant to Article XII, Section 6 of the DMC Medical Staff Bylaws.

The MEC subsequently voted to reappoint Dr. El-Khalil to the DMC Medical
Staff.  Neither Dr. El-Khalil or the MEC appealed the decision pursuant to Article
XII, Section 8 of the DMC Medical Staff Bylaws.  As such, the Governing Body
should have acted upon the recommendation of the MEC and reappointed Dr. El-
Khalil to DMC's Medical Staff rather than refer it to the JCC.

As stated, there are no provisions giving the JCC the authority to approve or disapprove a physician for reappointment on DMC's medical staff.  The Governing Body should have simply acted on the MEC's decision or the worst referred the matter back to the MEC for clarification.  Because there is nothing in the DMC Medical Staff Bylaws allowing the JCC to be the final arbiter in the Fair Hearing Process, it was error to allow the JCC to decide upon Dr. El-Khalil's reappointment.

## CONCLUSION

Dr. El-Khalil is an excellent podiatrist.  He has never had a malpractice case filed against him nor has he ever been accused of inadequate/negligent patient care.  Dr. El-Khalil has privileges at Henry Ford Health System and Garden City Hospital and serves as the President of an Accountable Care Organization.  He has no tolerance for inadequate patient care or fraudulent activity on the behalf of health care professionals/institutions.  Unfortunately, it is clear the Administration of the Detroit Medical Center does have such a tolerance as demonstrated in its actions in this case.

Rather than subjecting Dr. El-Khalil to this type of retaliation for reporting grossly inadequate patient care and health care fraud and advocating his rights in the Federal Court lawsuit, the Administration of DMC should be spending this time to ask Dr. Tedeschi what he has done about the inadequate patient care and the allegations of health care fraud.

7

The Governing Body should summarily reject the unauthorized vote of the JCC to deny Dr. El-Khalil's reappointment to the DMC Medical Staff and reappoint Dr. El-Khalil to the Medical Staff of the DMC.

Respectfully submitted,

Ben M. Gonek

Attorney for Dr. El-Khalil

# ATTACHMENT A

**DETROIT MEDICAL CENTER – MEC**

**RE: ALI A. EL-KHALIL, DPM**

_____ /

## REPORT AND RECOMMENDATION OF HEARING PANEL

A hearing was conducted in this matter beginning at 10:26 a.m. on December 17, 2018, in conference room C505 Old Hutzel, and ending for the day at 3:02 p.m. The hearing continued on February 12, 2019 beginning at 10:03 a.m. and ending at 1:45 p.m. at Charlotte Failing Board Room at Kresge Eye Institute. David C. Whipple had been previously appointed the Hearing Officer. Present were Hearing Panel members, Daniel Ridelman, M.D., Arlene Rozelle, M.D., Anne Messman, M.D., Deepti Zotshi, M.D. and Chaya Rain Pitman-Hunt, M.D. Also present were Attorney Roger D. Meyers and his assistant, Wendy Binkhorn, representing Detroit Medical Center Medical Executive Committee, and Dr. Kurt Hesse representing the Medical Executive Committee, Attorney Ben M. Gonek, representing Dr. Ali A. El-Khalil, DPM, and Dr. Ali A. El-Khalil, DPM. Also present to observe by consent of the parties on the first hearing date was Attorney William Tanoury representing Dr. Nsisma Usen, DPM

### JURISDICTION

The hearing was held pursuant to the Bylaws of the Medical Staff of the Detroit Medical Center dated January 5, 2018.

### THE HEARING

An exhibit book was entered into evidence by agreement of the parties. Two videos were also entered into evidence. Sworn testimony was taken from the witnesses listed below.

1

Persons testifying for Detroit Medical Center's Medical Executive Committee were:

> Dr. Nsisma Usen, DPM
> Dr. Kurt Hesse
> Dr. Harry Kezelian

Persons testifying for Dr. Ali A. El-Khalil, DPM were:

> Dr. Ali A. El-Khalil, DPM
> Dr. Chadi Saad
> Dr. Yasser Hammoud

Both parties gave opening and closing statements and conducted direct and cross examination. Hearing Panel members also asked questions of the witnesses. All members of the Hearing Panel and Dr. El-Khalil were present for the entire hearing. The parties waived post-hearing briefs. Deliberations took place at the hearing location on February 12, 2019. All Hearing Panel members were present, together with David C. Whipple. The Hearing Panel members had available all exhibits for the deliberations.

## BURDEN OF PROOF

The Medical Staff By-Laws provide at Article XII, Section 4C:

> "In all cases in which a hearing is conducted under this Article, the burden of going forward shall rest with the MEC to establish a basis for the complaint against the affected individual, the burden of proof shall then rest with the affected individual to prove, by a preponderance of the evidence, that the qualifications for appointment or continued appointment are met and that the recommendation(s) that prompted the hearing was incorrect, unjustified, insufficient arbitrary or was not otherwise sustained by the evidence."

and at Article XII, Section 6:

> "At the close of the hearing the Review Committee shall deliberate, considering only the evidence and exhibits presented at the hearing, the testimony of witnesses, and any written statements or briefs submitted following the hearing. The Review Committee shall consider whether the Adverse Recommendation was reasonable, sustained by the evidence, or unfounded, and shall report in writing to the MEC

2

recommending affirmation, modification or rejection of the original recommendation. A copy of the report shall be delivered by certified mail, return receipt requested, to the affected individual within ten (10) days from the close of the hearing."

## FINDINGS, REASON AND EVIDENCE

The MEC recommended that Dr. Ali A. El-Khalil not be re-appointed based on the conclusion that he had an alleged pattern of disruptive and aggressive behavior that reflected a lack of judgment, ethics, professionalism and ability to work with others. To support this broad conclusion, the MEC made the following allegations:

Allegation #1: Dr. Ali A. El-Khalil held himself out as an FBI agent.

Findings: This allegation was denied by Dr. Ali A. El-Khalil. No evidence was provided by the MEC to back it, nor was it reported to any law enforcement agency.

Allegation #2: Dr. El-Khalil did consults that were not requested.

Findings: Again, the MEC provided no evidence for this serious accusation that would potentially signify billing fraud. The Fair Hearing Panel considers such proof would be easy to obtain from the EMR and considers the absence thereof reflective of the lack of proper investigation and due process on the part of the MEC. During his testimony, Dr. Saad did confirm that both himself and his patient were looking for a second opinion from Dr. El-Khalil on a patient previously seen by Dr. Usen, who subsequently became upset and made the threatening and obscenity-laden phone call to Dr. Saad that the panel listened to during the hearing (and which Dr. Usen denied under oath during his own testimony until he himself listened to the recording).

Allegation #3: Dr. El-Khalil had problems with his behavior at various Oakwood hospitals.

Findings: There is evidence that the DMC Medical Executive Committee had previously considered this information and had not deemed it serious enough to deny re-appointment. The

3

information and its age do not prove a pattern of behavior. Additionally, the Hearing Panel was made aware of the numerous convictions that resulted from Dr. El-Khalil's whistleblowing at Oakwood facilities, some of which involve the very same physicians that denied his credentialing at that system, further rendering their accusations and actions irrelevant.

Allegation #4: General disruptive behavior with Dr. Mohammad Khalil.

Findings: Again, no acceptable evidence was provided by the MEC. The panel found potential conflicts of interest in the letters of complaint submitted by the MEC. The panel finds significant contrast in relation to previous cases of denial of credentialing based on disruptive behavior, where solid, corroborated evidence from unbiased individuals was provided, as well as well-documented remediation options, warnings and ultimatums to the involved physician. The MEC did not offer any evidence that Dr. El-Khalil was contacted by his superiors, the Credentialing Committee or the MEC to discuss his allegedly disruptive behavior or to alert him of his impending non re-appointment. In fact, the only documented communication regarding this was an email unofficially (and incorrectly) confirming to Dr. El-Khalil that his privileges would be renewed. Although not cited by the MEC in their decision, the Panel reviewed the video recording of the gas station incident between the doctors. While both doctors acted in a less than admirable way, it showed Dr. Ali El-Khalil was physically assaulted by Dr. Khalil and did not fight back. Furthermore, it did not occur in a hospital setting and cannot therefore be considered disruptive of patient care. The video of the incident that did occur at Sinai-Grace Hospital only showed a short verbal altercation between the same two physicians that does not prove disruption of patient care. The MEC claimed that recording such video was unethical and possibly illegal. The Hearing Panel found it was neither.

Allegation #5: Dr. Ali El-Khalil made misstatements on his re-appointment application.

4

<u>Findings</u>: The panel finds this omission irrelevant, as it was not mentioned by the MEC in their original decision, and yet it was introduced as evidence at the hearing. Regardless, the panel doubts that such an omission would justify a denial of privileges for other DMC physicians, raising the issue of arbitrarity.

## CONCLUSION AND RECOMMENDATION

The Hearing Panel was asked to determine if the action of the Medical Executive Committee to recommend non re-appointment of Dr. Ali A. El-Khalil's privileges and membership was incorrect, not justified, unreasonable, arbitrary, or not substantiated by the evidence. It concludes it was all of the above.

Furthermore, the evidence presented at the hearing brought to light significant and unmanaged conflicts of interest at each step of the process and a consistent lack of proper investigation and due process on the part of the MEC. The panel is also concerned about the timing of events, finding it suspicious that since his initial appointment in 2008, Dr. El-Khalil's privileges and membership at the DMC were consistently renewed without any mention whatsoever of any behavioral issues, and it wasn't until his accusations were made that the MEC found his behavior to be grounds for non re-appointment.

Respectfully submitted,

**HEARING PANEL**

_____

Daniel Ridelman, M.D.

_____

Anne Messman, M.D.

Dated: February ____, 2019

_____

Arlene Rozelle, M.D.

5

_____
Chaya Rain Pitman-Hunt, M.D.

_____
Deepti Zutshi, M.D.

Findings: The panel finds this omission irrelevant, as it was not mentioned by the MEC in their original decision, and yet it was introduced as evidence at the hearing. Regardless, the panel doubts that such an omission would justify a denial of privileges for other DMC physicians, raising the issue of arbitrarity.

## CONCLUSION AND RECOMMENDATION

The Hearing Panel was asked to determine if the action of the Medical Executive Committee to recommend non re-appointment of Dr. Ali A. El-Khalil's privileges and membership was incorrect, not justified, unreasonable, arbitrary, or not substantiated by the evidence. It concludes it was all of the above.

Furthermore, the evidence presented at the hearing brought to light significant and unmanaged conflicts of interest at each step of the process and a consistent lack of proper investigation and due process on the part of the MEC. The panel is also concerned about the timing of events, finding it suspicious that since his initial appointment in 2008, Dr. El-Khalil's privileges and membership at the DMC were consistently renewed without any mention whatsoever of any behavioral issues, and it wasn't until his accusations were made that the MEC found his behavior to be grounds for non re-appointment.

Respectfully submitted,

**HEARING PANEL**

_____
Daniel Ridelman, M.D.

_____
Anne Messman, M.D.

Dated: February _____, 2019

_____
Arlene Rozelle, M.D.

5

<u>Findings</u>: The panel finds this omission irrelevant, as it was not mentioned by the MEC in their original decision, and yet it was introduced as evidence at the hearing. Regardless, the panel doubts that such an omission would justify a denial of privileges for other DMC physicians, raising the issue of arbitrarity.

## **CONCLUSION AND RECOMMENDATION**

The Hearing Panel was asked to determine if the action of the Medical Executive Committee to recommend non re-appointment of Dr. Ali A. El-Khalil's privileges and membership was incorrect, not justified, unreasonable, arbitrary, or not substantiated by the evidence. It concludes it was all of the above.

Furthermore, the evidence presented at the hearing brought to light significant and unmanaged conflicts of interest at each step of the process and a consistent lack of proper investigation and due process on the part of the MEC. The panel is also concerned about the timing of events, finding it suspicious that since his initial appointment in 2008, Dr. El-Khalil's privileges and membership at the DMC were consistently renewed without any mention whatsoever of any behavioral issues, and it wasn't until his accusations were made that the MEC found his behavior to be grounds for non re-appointment.

Respectfully submitted,

**HEARING PANEL**

_____
Daniel Ridelman, M.D.

_____
Anne Messman, M.D.

Dated: February _____, 2019

_____
Arlene Rozelle, M.D.

<u>Findings</u>:  The panel finds this omission irrelevant, as it was not mentioned by the MEC in their original decision, and yet it was introduced as evidence at the hearing.  Regardless, the panel doubts that such an omission would justify a denial of privileges for other DMC physicians, raising the issue of arbitrarity.

## CONCLUSION AND RECOMMENDATION

The Hearing Panel was asked to determine if the action of the Medical Executive Committee to recommend non re-appointment of Dr. Ali A. El-Khalil's privileges and membership was incorrect, not justified, unreasonable, arbitrary, or not substantiated by the evidence.  It concludes it was all of the above.

Furthermore, the evidence presented at the hearing brought to light significant and unmanaged conflicts of interest at each step of the process and a consistent lack of proper investigation and due process on the part of the MEC.  The panel is also concerned about the timing of events, finding it suspicious that since his initial appointment in 2008, Dr. El-Khalil's privileges and membership at the DMC were consistently renewed without any mention whatsoever of any behavioral issues, and it wasn't until his accusations were made that the MEC found his behavior to be grounds for non re-appointment.

Respectfully submitted,

**HEARING PANEL**

_____
Daniel Ridelman, M.D.

_____
Anne Messman, M.D.

Dated: February 26 , 2019

_____
Arlene Rozelle, M.D.

5

D.O.    3/4/19

Chaya Rain Pitman-Hunt, M.D. D.O.
CP

_____

Deepti Zutshi, M.D.

6

Chaya Rain Pitman-Hunt, M.D.

Deepti Zutshi, M.D.

# ATTACHMENT B



DETROIT MEDICAL CENTER

March 22, 2019

**Corporate Medical Affairs**

HUTZEL BUILDING
4707 St. Antoine, Ste E510
Detroit, MI 48201-1498
(313) 993-0203 Main Phone
(313) 993-0010 Fax

**CERTIFIED MAIL - RETURN RECEIPT REQUESTED.**

**CONFIDENTIAL PEER VIEW MATERIAL**

Ali Abdul Karim El-Khalil, DPM
5830 Golfview Dr
Dearborn Heights, MI 48127

**RE:   NOTICE OF MEDICAL EXECUTIVE COMMITTEE DECISION FOLLOWING RECEIPT OF THE REVIEW COMMITTEE'S WRITTEN REPORT**

Dear Dr. El-Khalil:

You previously received a copy of the Review Committee's written decision following the February 12, 2019 hearing. This is to notify you that pursuant to Article XII, Section 7, of the Bylaws of the Medical Staff of the Detroit Medical Center ("Medical Staff Bylaws"), the Medical Executive Committee ("MEC") reviewed the Review Committee's decision at its meeting on March 18, 2019. The MEC has reversed its prior Adverse Recommendation, which initially had been to recommend termination of your Membership and Privileges with the DMC ("MEC's March 19, 2018 Decision"). Therefore, at this time, your status with the DMC remains as it has been prior to the MEC's initial Adverse Recommendation.

You have the right to appeal the MEC's March 18, 2019 Decision pursuant to Article XII, Section 8, of the Medical Staff Bylaws. Below is a summary of your appeal rights and the appeal procedure as set forth in the Medical Staff Bylaws:

1.  Within fifteen (15) days of receipt of this notice, you may submit a written request with the DMC Governing Body for an appeal of the MEC's Decision. Please direct any such written request to Dr. Anthony J. Tedeschi, M.D., the DMC's CEO, Detroit Market Office, 3990 John R, Detroit, MI 48201-2018. Failure to request an appeal shall constitute waiver of the right to an appeal, and the Governing Body may then act upon the MEC's Decision.

2.  Any written request for an appeal shall include whether you seek oral argument.

3.  In the event you timely request an appeal, the Governing Body shall appoint an ad hoc committee from its membership to conduct such an appeal ("Appeal Committee").

4.  Any written request for an appeal must state the reasons for the which the review is sought and argument that you may wish the Appeal Committee to consider.

5.  The Appeal Committee shall have access to the exhibits and record created before the Review Committee. The appeal review is limited to a determination of whether the procedures utilized by the Review Committee were correct, erroneous, arbitrary, or discriminatory. The Appeal Committee shall not undertake a *de novo* review of the evidence presented before the Review

www.dmc.org

Committee or otherwise re-determine the factual findings, conclusions, or professional recommendations of the Review Committee.

6. Oral argument before the Appeal Committee is permitted only if requested and only if the Appeal Committee determines that the record requires clarification and requests that the parties appear. The failure to appear, without good cause, when so requested shall be deemed a waiver of the right to present oral argument and the Appeal Committee may thereafter submit its recommendation to the Governing Body. A copy of the transcript of any oral argument presented before the Appeal Committee shall be provided to you upon payment by you of reasonable charges associated with its preparation.

7. Neither you nor the MEC shall be permitted to introduce additional evidence or to present additional witnesses during the appeal except for compelling circumstances as determined by the Appeal Committee.

8. At the close of the appeal, the Appeal Committee will deliberate and shall affirm, modify or reject the MEC's Decision. Within thirty (30) days from the close of the appeal, the Appeal Committee shall submit its report to the Governing Body.

9. Under Article XII, Section 9, the Governing Body shall then, at its next regular meeting, consider the recommendation of the Appeal Committee, including the recommendation of the MEC and the report of the Review Committee and will affirm, modify or review the Adverse Recommendation. You will be notified of the Governing Body's decision, which shall be final and binding.

This letter does not purport to be a complete statement of your rights and obligations under the Medical Staff Bylaws, which you previously received and are advised to review carefully. The Medical Staff Bylaws are also available online at https://www.dmc.org/docs/librariesprovider74/default-document-library/dmc-bylaws-revised-01-05-18-ada.pdf?sfvrsn=ffb3d23e_2.

Sincerely,

John Haapaniemi, D. O.
President of the DMC Medical Staff
Chairman of the Medical Executive Committee

cc:     Rudolph P. Valentini, M.D., Group Chief Medical Officer
        Vinay Pallekonda, M.D. Chief Medical Officer, Sinai-Grace Hospital
        Bryan Little, M.D. Specialist-in-Chief, Department of Orthopaedic Surgery
        Mary L. Merity, C.P.C.S., Corporate Director, Medical Affairs

www.dmc.org

Children's Hospital of Michigan • Detroit Receiving Hospital and University Health Center • DMC Physician Group •
DMC University Laboratories • Harper University Hospital • Huron Valley-Sinai Hospital • Hutzel Hospital •
Rehabilitation Institute of Michigan • Sinai-Grace Hospital

# ATTACHMENT C

## Ben Gonek

| | |
|---|---|
| **From:** | Meyers, Roger P. <meyers@bsplaw.com> |
| **Sent:** | Wednesday, May 8, 2019 6:45 PM |
| **To:** | Ben Gonek |
| **Subject:** | RE: JCC-Board Ltr to El-Khalil re JCC decision 05 03 19.pdf |

Ben,

Although the Bylaws do not provide for copies of correspondence to counsel, I have reiterated to medical affairs your request for a courtesy copy. I hadn't received this letter yet myself, or else I would have been happy to forward it.

Unlike the fair-hearing review committee, which is an ad-hoc committee specially constituted upon request – and therefore the Bylaws allow an opportunity to seek disqualification – there is no such right under the Bylaws with regard to the JCC, which is a standing body. Nor is the request relevant, given that (as more fully detailed in the Bylaws), your client has an optional appeal by right that is to be based on the underlying fair-hearing record itself rather than the JCC vote.

**Roger P. Meyers** | Member | Bush Seyferth & Paige PLLC | (248) 822-7844 | meyers@bsplaw.com

---

**From:** Ben Gonek <ben@goneklaw.com>
**Sent:** Tuesday, May 7, 2019 8:45 AM
**To:** Meyers, Roger P. <meyers@bsplaw.com>
**Subject:** FW: JCC-Board Ltr to El-Khalil re JCC decision 05 03 19.pdf

Dear Mr. Meyers,

Attached please find a letter sent to Dr. El-Khalil and not myself that he (Dr. El-Khalil) received yesterday.
On several occasions I have asked that I be copied on correspondence sent to Dr. El-Khalil regarding the issues before DMC.
Please see to it I am in the future.

With respect to the letter received, it indicates the JCC voted to deny Dr. El-Khalil privileges. Will you send me the names of the individuals who are on the JCC that voted so I can determine whether or not they had a conflict of interest?

Thank you for your cooperation. Ben Gonek