UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALI EL-KHALIL,

       Plaintiff,

v.

ANTHONY TEDESCHI et al.,

       Defendants.
_____/

Case No. 18-12759

HON. MARK A. GOLDSMITH

**OPINION & ORDER
DENYING DEFENDANT'S MOTION FOR SANCTIONS (Dkt. 252)**

Before the Court is Defendant Mohammed Khalil's motion for sanctions against (i) Plaintiff Ali El-Khalil and (ii) Ben Gonek, who was El-Khalil's attorney at the time this action was filed (Dkt. 252). Khalil relies on this Court's inherent authority to impose sanctions and 28 U.S.C. § 1927. For the reasons that follow, the Court denies Khalil's motion.[1]

## I. BACKGROUND

As this Court has recounted in prior opinions, El-Khalil is a podiatrist formerly employed by Detroit Medical Center (DMC) who sued DMC, its CEO Anthony Tedeschi, and three of El-Khalil's fellow DMC podiatrists: Khalil, Nsima Usen, and Mahmud Zamlut. See 5/31/19 Op. & Order at 1 (Dkt. 64) (granting in part and denying in part motions to dismiss) (citing Am. Compl. ¶¶ 1–2, 4–6 (Dkt. 35)). El-Khalil alleged that he reported suspicions of healthcare fraud at DMC and that, in response, DMC improperly declined to renew El-Khalil's staff privileges. Id. at 2

---

[1] Because oral argument will not aid the Court's decisional process, the issues will be decided based on the parties' briefing and the R&R. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motion, the briefing includes El-Khalil's response (Dkt. 253), Khalil's reply to El-Khalil's response (Dkt. 256), Gonek's response (Dkt. 258), and Khalil's reply to Gonek's response (Dkt. 263).

1

(citing Am. Compl. ¶¶ 13–22). El-Khalil brought three claims: (i) retaliation in violation of the False Claims Act (FCA), 31 U.S.C. § 3729, et seq.; (ii) conspiracy to violate the retaliation provision of the FCA; and (iii) tortious interference with an advantageous business relationship. Id.

This Court granted Khalil, Usen, and Zamlut's motions to dismiss in part, dismissing El-Khalil's FCA claims against these Defendants. Id. at 4. The Court explained that Congress had amended the FCA in 2009 to expand the body of individuals protected by the statute to "any employee, contractor, or agent," which prompted the United States Court of Appeals for the Sixth Circuit to find—consistent with the "overwhelming[]" weight of authorities from other circuits—that Congress "intended to limit the FCA to employment-like relationships." Id. at 4 (quoting Vander Boegh v. EnergySolutions, Inc., 772 F.3d 1056, 1062 (6th Cir. 2014)) (punctuation modified). Khalil, Usen, and Zamlut did not have an alleged "employment-like relationship" with El-Khalil; rather, these "Defendants were merely colleagues of Plaintiff at DMC." Id. at 4.

Zamlut subsequently filed a motion for sanctions under Federal Rule of Civil Procedure 11 based on El-Khalil's prosecution of FCA claims against him. See 3/20/20 Op. & Order at 1 (Dkt. 109). The Court granted that motion, explaining that Rule 11 sanctions are available where an argument is "warranted neither by existing law nor by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Id. at 2 (quoting Fed. R. Civ. P. 11(b)(2)). El-Khalil's argument that a plaintiff could hold a colleague without an employment-like relationship liable under the FCA was not supported by existing law, as El-Khalil did not "identif[y] a case that directly support[ed] the proposition that the FCA's anti-retaliation provision operates outside 'employment-like' relationships . . . ." Id. at 2. As to any argument for extending, modifying, or reversing existing law, this Court concluded:

2

> [El-Khalil] identified a gap in Sixth Circuit law where no court had definitively ruled. But he did not make an argument for why his interpretation of the law should fill that gap, why numerous other circuits were wrong, or why the obvious implications of Vander Boegh should be ignored. Thus, his conclusory assertion that his claim against Zamlut was valid was frivolous.

Id. at 4.

This Court ultimately entered a stipulated order dismissing Tedeschi from the action (Dkt. 108), granted summary judgment to DMC on the FCA retaliation claim, see 1/14/21 Op. & Order (Dkt. 218), and declined to exercise supplemental jurisdiction over the remaining state-law claims, see id. Gonek subsequently withdrew from his representation of El-Khalil. See Gonek Br. in Supp. Resp. at 1 (citing 3/16/21 Order (Dkt. 235) (granting motion for withdrawal)).

Khalil now moves for sanctions against El-Khalil and Gonek.

## II. ANALYSIS

The Court first identifies the grounds for sanctions presented by Khalil. It then addresses Khalil's arguments (i) that the law-of-the-case doctrine applies to his request, (ii) that sanctions are appropriate under this Court's inherent powers, and (iii) that sanctions are appropriate under 28 U.S.C. § 1927.

### A. Frivolous Claims in Present Suit and Other Grounds for Sanctions

Khalil's primary ground for requesting sanctions is that El-Khalil and Gonek brought frivolous claims against him and declined to retract those claims despite receiving notice that they lacked merit. Khalil asserts that—like El-Khalil's FCA claims against Zamlut—El-Khalil's FCA claims against Khalil were "frivolous" and brought despite "notice that Defendant doesn't and never employed Plaintiff, and that the law specifically excludes relief under the FCA unless an employer/employee relationship existed." Mot. at 4. In Khalil's view, El-Khalil "kn[ew] all along that his claim [was] wholly without merit [and] frivolous" and that "there was no possibility of recovery under the FCA." Br. in Supp. Mot. at 11; see also Reply to El-Khalil Resp. at 4 (arguing

3

that El-Khalil and his attorney were on notice that the FCA claims lacked merit when Defendants filed their motions to dismiss).

Khalil also notes that, after the filing of Defendants' motion to dismiss, El-Khalil and his attorney "doubled down by filing the amended complaint which didn't even cure the elementary FCA element of alleging an employment-like relationship." Br. in Supp. Mot. at 16. The record reflects that, after the filing of El-Khalil's initial complaint (Dkt. 1), Khalil filed a motion to dismiss—citing Vander Boegh and arguing that El-Khalil had failed to allege an employer-like relationship (Dkt. 30)—but El-Khalil nonetheless maintained his FCA claims against Khalil in his later-filed amended complaint, see Am. Compl.

Khalil asserts several other factors he considers relevant to this Court's ruling on his motion for sanctions. These arguments follow.

1. **Physical Altercation and Subsequent Legal Filings**

Khalil notes that he and El-Khalil had an altercation on October 10, 2017 during which El-Khalil "threaten[ed]" Khalil and "tailgat[ed] him into a gas station," leaving Khalil "without choice but to exercise his right to self-defense." Br. in Supp. Mot. at 5. El-Khalil then filed criminal charges against Khalil with Dearborn Heights Police Department. Id. El-Khalil also sought a personal protection order against Khalil. Id. at 6. Khalil submits that these efforts were unsuccessful and describes them as "abuse of the legal process." Id.; see also id. at 11 (submitting that Dearborn Heights Police Department declined to pursue criminal charges against Khalil).

2. **"Frivolous" Wayne County Suit**

Khalil also characterizes a Wayne County Circuit Court case as "frivolous." Br. in Supp. Mot. at 15. Khalil does not elaborate on this argument or specify which of the two Wayne County cases filed against him by El-Khalil he considers frivolous: either (i) El-Khalil v. Khalil, No 17-016659-NO, filed in 2017, which brought claims of assault and battery, intentional infliction of

4

emotional distress, tortious interference, and defamation, and which the parties settled pursuant to a dismissal without prejudice in August 2018; or (ii) El-Khalil et al. v. Khalil et al., No. 21-004265-CB, filed in March 2021, which alleged various "improper activities" undertaken by Khalil and Usen related to complaints they made about El-Khalil's professional conduct and which renewed the assault, battery, and intentional infliction of emotional distress charges. See 1/19/22 El-Khalil, No. 21-004265-CB Op. & Order (Dkt. 258-4) (recounting backgrounds of both cases). Several of these claims appear to derive from the October 10, 2017 physical altercation referenced above.

Challenging the suggestion that El-Khalil, No. 21-004265-CB was frivolous, Gonek submits that El-Khalil's claims of assault and battery and intentional infliction of emotional distress claims survived Khalil's motion for summary disposition, while El-Khalil's other claims were dismissed due to statute of limitations issues. Gonek Br. in Supp. Resp. at 7 n.6 (citing 1/19/22 El-Khalil, No. 21-004265-CB Op. & Order).

### 3. El-Khalil's Attempts to Revoke Khalil's Hospital Privileges

Khalil states that El-Khalil "[a]ttempted but failed to have Defendant's privileges revoked at various hospitals." Id. at 15. Khalil does not elaborate.

### 4. Reference to Additional State Court Case

Khalil also states: "Plaintiff and [Gonek] have filed at least one known case related to so called retaliation against Plaintiff. That too, had a very fortuitous ending for Plaintiff." Br. in Supp. Mot. at 16. Khalil's argument on this point is not clear. He cites to a Michigan Court of Appeals case affirming the dismissal of El-Khalil's breach-of-contract claim against defendants unrelated to this case. See El-Khalil v. Oakwood Health Care Inc., No. 329986, 2019 WL 6045564 (Mich. Ct. App. Nov. 14, 2019). Khalil states: "This case as it relates to the individual defendants is the same as the individuals in Oakwood Healthcare." Br. in Supp. Mot. at 24. However, none of Khalil, Usen, or Zamlut is named as a party in that opinion. See El-Khalil, 2019 WL 6045564.

5

Interpreting Khalil's reference to this case as an argument that the action was frivolous, Gonek submits that this case "was twice reviewed, reversed and remanded by the Michigan Supreme Court before being finally decided—hardly evidence that the issues it raised were frivolous." Br. in Supp. Gonek Resp. at 7–8.

**5. Irrelevant, Defamatory, and Inconsistent Allegations Presented in Present Case**

Khalil further submits that "Plaintiff and [Gonek] used this [present federal] case as a shield to defame Defendant by alleging false, irrelevant, and unsubstantiated fraud under the cover of litigation immunity." Br. in Supp. Mot. at 13. Khalil submits that El-Khalil asserted "fraud" against Khalil in El-Khalil's response to Khalil's motion to dismiss, which Khalil considers "irrelevant to Plaintiff's FCA retaliation claims." Id. at 13–14; see also Reply to Gonek Resp. at 5 (submitting that Gonek's filings went on unnecessary "5-page binge of specific acts of alleged billing fraud regarding patients A and B"). And Khalil states: "Plaintiff went into great detail outlining his false allegations against Defendant of specific fraudulent conduct pertaining to patient A and B. . . ." Br. in Supp. Mot. at 13–14; see also id. at 15 ("[El-Khalil] falsely outlined specific irrelevant acts of alleged fraud . . . . The confidence Plaintiff showed in his pleadings and affidavits regarding fraud and other misconduct was significantly tempered if not backtracked when he [was] deposed.").

Specifically, Khalil submits that El-Khalil "admitted that Patient A not only had both feet but that she in fact had 9 out of ten toes." Br. in Supp. Mot. at 22. Khalil sees El-Khalil's testimony in this context as conflicting with statements he made in an affidavit. See id.; see also Reply to El-Khalil Resp. at 2–3 (citing 2/28/20 Pl. Dep. at 200–201 (Dkt. 187) (reflecting El-Khalil's testimony that Patient A still had nine toes); 4/27/20 Pl. Aff. at 8, 11 (Dkt. 115-3) (reflecting El-Khalil's averment that "Patient A's feet gradually were removed, piece by piece," and that by November 2017, "Patient A had lost most of both feet")).

6

Khalil argues that these statements were irrelevant to El-Khalil's FCA claims and concludes that El-Khalil made them "in bad faith and to continue to impune [sic] the reputation of Defendant." Br. in Supp. Mot. at 22–23; see also Reply to El-Khalil Resp. at 3–4. He also considers "such inconsistent sworn testimony [to be] a prime example of perjury." Reply to El-Khalil Resp. at 3.

**6. Misrepresentation in Wayne County Circuit Court**

Khalil submits that, in one of the Wayne County Circuit cases, El-Khalil misrepresented his role in the case before this Court, claiming in state court that "his P.C., not [El-Khalil himself], was the plaintiff in this [federal] Case." Mot. at 3; see also Br. in Supp. Mot. at 11. Gonek submits that El-Khalil here refers to El-Khalil, No. 21-004265-CB, a case in which Gonek had no involvement. Gonek Br. in Supp. Resp. at 1, 8–9. In that case, El-Khalil stated in a motion that "(1) only Ali El-Khalil DPM P.C. was a party to the federal court case, and (2) [Defendants] have no claims against Ali El-Khalil, the individual." See El-Khalil, No. 21-004265-CB, Pl. Mot. at 6–7 (Dkt. 252-7). Khalil considers this representation to be disingenuous. See Br. in Supp. Mot. at 11. He is correct that El-Khalil the individual—not El-Khalil the professional corporation (PC)—was a party to the case before this Court.

The Court next considers whether these grounds merit sanctions on the theories presented by Khalil.

**B. Law of the Case**

Khalil argues that "[t]his Court should apply the 'law of the case doctrine' to Defendant Mohammed Khalil because Plaintiff's claims against Defendant are exactly the same as the claims against Zamlut." Br. in Supp. Mot. at 20–21.

7

Khalil is incorrect that this Court's grant of a motion for sanctions to Zamlut under Rule 11 requires a grant of the present motion for sanctions brought under this Court's inherent powers and 28 U.S.C. § 1927. "Under the law of the case doctrine, findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation." In re B & P Baird Holdings, Inc., 759 F. App'x 468, 477 (6th Cir. 2019) (punctuation modified). However, "[t]he law of the case doctrine does not apply to earlier proceedings where a different legal standard governs." Id. at 477–478 (affirming finding that law of the case doctrine was inapplicable where prior ruling concerned "a separate [question] entirely" than issue presented).

Gonek correctly submits that Zamlut's motion was brought under "a markedly different legal standard" than Khalil's motion. Br. in Supp. Gonek Resp. at 13–14. Under Rule 11(b)(2), sanctions are available where an argument is "warranted neither by existing law nor by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Khalil purposefully declined to bring his present motion under Rule 11. See Br. in Supp. Mot. at 16 ("Defendant did not want to spend extra resources in specifically putting together and complying with Rule 11's notice requirements . . . ."). Rather, Khalil requests relief under this Court's inherent powers and 28 U.S.C. § 1927. As further discussed below, awards of sanctions under these bases are governed by a "different legal standard" than Rule 11. In re B & P, 759 F. App'x at 477.[2]

A prior award of sanctions under Rule 11 does not implicate the law of the case doctrine for a subsequent request for sanctions under a court's inherent powers or § 1927. See id.; Entech, LTD., v. Speece et al., No. 16-cv-01541, 2021 WL 4268643, at *4 (N.D. Ohio Aug. 10, 2021) (recommending finding that "the law of the case does not preclude review" for sanctions under

---

[2] Khalil submits that this Court awarded sanctions to Zamlut based on both Rule 11 and this Court's inherent authority. See Mot. at 3–4. This assertion is incorrect; sanctions were awarded to Zamlut only under Rule 11. See 3/20/20 Op. & Order.

8

Rule 11(b)(1), § 1927, or inherent authority where court previously made finding as to sanctions only under Rule 11(b)(3)), report and recommendation adopted, 2022 WL 614982 (N.D. Ohio Mar. 2, 2022). The Court rejects Khalil's argument that the law of the case doctrine applies here.

The Court proceeds to consider Khalil's request under the two bases he asserts: (i) the Court's inherent powers and (ii) 28 U.S.C. § 1927.

### C. Sanctions Under Inherent Powers

A district court has "broad discretion" in deciding whether to exercise its inherent authority to levy sanctions. Plastech Holding Corp. v. WM Greentech Auto. Corp., 257 F. Supp. 3d 867, 879 n.13 (E.D. Mich. 2017). A court's "inherent power is not limited to sanctioning attorneys only; [courts] can sanction a party as well." Stalley v. Methodist Healthcare, 517 F.3d 911, 920 (6th Cir. 2008) (finding sanctions appropriate against both plaintiff and attorneys).

"A court may assess attorney's fees under its inherent powers when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, . . . or when the conduct is tantamount to bad faith . . . ." Metz v. Unizan Bank, 655 F.3d 485, 489 (6th Cir. 2011) (punctuation modified). To award sanctions on this basis, a district must find: "[1] that the claims advanced were meritless, [2] that counsel knew or should have known this, and [3] that the motive for filing the suit was for an improper purpose such as harassment." Id. (punctuation modified, brackets in original). Khalil, El-Khalil, and Gonek all agree that this standard applies. See Br. in Supp. Mot. at 8–9; Br. in Supp. Khalil Resp. at 12; Br. in Supp. Gonek Resp. at 14.

As to the first two factors, Khalil argues that El-Khalil's FCA claims were meritless and that El-Khalil and his attorney should have known they were meritless for similar reasons presented in Zamlut's meritorious Rule 11 motion: Sixth Circuit caselaw had indicated that the

9

FCA requires an employment-like relationship, but El-Khalil and his counsel nonetheless asserted FCA claims against a mere colleague. See Br. in Supp. Mot. at 12.³

But to win sanctions under this Court's inherent powers, Khalil must also present clear and convincing evidence that "the motive for filing the suit" was something tantamount to bad faith. Metz, 655 F.3d at 489 (punctuation modified). On this last factor, a court "must find something more than that a party knowingly pursued a meritless claim or action," and "[e]xamples of 'something more' include": (i) "a finding that the plaintiff filed the suit for purposes of harassment or delay, or for other improper reasons"; (ii) "a finding that the plaintiff filed a meritless lawsuit and withheld material evidence in support of a claim"; and (iii) "a finding that a party was delaying or disrupting the litigation or hampering enforcement of a court order." Id. (punctuation modified,

---

³ Some courts have indicated that the second prong of the Sixth Circuit's test—that "counsel knew or should have known" that the claims were frivolous, Metz, 655 F.3d at 489—allows a court to sanction a party if his or her attorney knew the claims lacked merit, even if the party lacked that knowledge. See, e.g., Concepta Bus. Sols., LLC v. Cogent Analytics, LLC, 1:16-cv-438, 2017 WL 1881341, at *8 (S.D. Ohio May 9, 2017) ("Although the second prong refers to counsel's knowledge, the Sixth Circuit has held that a court may sanction parties pursuant to its inherent power."); Davis v. Detroit Downtown Dev. Auth., No. 17-cv-11742, 2018 WL 564235, at *2 (E.D. Mich. Jan. 26, 2018) (observing that a district court has the inherent authority to levy sanctions either "against a party or against her attorney" and noting that the second prong requires a showing that "counsel for the offending party knew or had reason to know the claims were meritless").

In practice, however, courts finding that inherent-power sanctions are appropriate against parties often do find that the parties themselves knew that the claims lacked merit. See, e.g., Stalley, 517 F.3d 911, 920 (6th Cir. 2008) (sanctioning both plaintiff and plaintiff's counsel, stating in part, "[w]ithout question, [plaintiff] and his attorneys know that he has no standing to raise the claims he asserts against the [defendants]," and "[plaintiff] cannot claim that he is arguing for a good-faith extension of the law"); Concepta, 2017 WL 1881341, at *9 (S.D. Ohio May 9, 2017) (sanctioning plaintiffs where "[p]laintiffs knew or should have known that their claims were meritless, yet continued to pursue those claims"). Khalil cites no caselaw to the contrary.

Khalil presents no basis for suspecting that El-Khalil—as opposed to his attorney—knew that "employment was a prerequisite to his . . . FCA claim." Br. in Supp. Mot. at 12. In fact, Khalil acknowledges that Gonek is responsible for the "bad law" behind El-Khalil's claims, focusing his criticism of El-Khalil on El-Khalil's alleged distortion of the facts. See Reply to El-Khalil Resp. at 1–3. This consideration counsels against an imposition of sanctions against El-Khalil under the test for inherent-authority sanctions, as a non-lawyer party to this action could not be expected to review Sixth Circuit caselaw, and he may have reasonably thought his FCA claims had merit.

emphasis in original). To prevail on this argument, the moving party must show bad faith or the equivalent of bad faith "by clear and convincing evidence." Mich. Immigrant Rts. Ctr. v. U.S. Dep't of Homeland Sec., No. 2:16-cv-14192, 2020 WL 5627088, at *3 (E.D. Mich. Sept. 21, 2020).

Khalil cannot meet this burden. He has provided multiple grounds to establish that the parties have a contentious history, and this history may even indicate bad blood. But a hostile relationship between litigants does not amount to bad faith in the filing of a specific suit. Khalil has failed to link El-Khalil and Gonek's supposedly improper conduct to a bad-faith "motive for filing" the action before this Court, and so inherent-authority sanctions are not appropriate. Metz, 655 F.3d at 489 (punctuation modified).[4]

Khalil points this Court to three state-court actions involving various claims including assault and battery. He has provided no cogent explanation for how these suits demonstrate that El-Khalil or his counsel acted with improper purpose when they brought FCA claims before this

---

[4] Where courts in this circuit have found that inherent-authority sanctions are appropriate, there has been a link tying the plaintiff's "bad faith" to the plaintiff's motive for asserting claims in the particular action at issue. See, e.g., First Bank of Marietta v. Hartford Underwriters Ins. Co., 307 F.3d 501, 525 (6th Cir. 2002) (affirming grant of sanctions under inherent authority where plaintiff's "improper purpose was to file a lawsuit as a mechanism to force [defendant] to settle" a claim, concluding that plaintiff "acted in bad faith and such bad faith clearly evinced [plaintiff's] improper purpose in pursuit of this litigation"); Concepta, 2017 WL 1881341, at *9–*10 (awarding sanctions against plaintiffs where they "filed this action for the specific purposes of attempting to put [one defendant] out of business, to interfere with [that defendant's] relationship with [codefendant], and to otherwise obtain results that were not intended through the judicial process").

In contrast, where the movant fails to connect the plaintiff's supposed bad-faith conduct to the purpose for pursuing the action, the request for inherent-authority sanctions fails. See, e.g., Brack v. Budish, 599 F. Supp. 3d 607, 628 (N.D. Ohio 2022) (finding that sanctions pursuant to inherent authority were "not warranted" where plaintiff "did not advance claims against [defendants] for an improper purpose"); Davis, 2018 WL 564235, at *5 (declining to impose inherent-authority sanctions where defendants failed to demonstrate that "Plaintiffs filed claims they knew to be meritless solely to postpone financing," stating: "[T]he Court cannot conclude that the case was brought for an 'improper purpose'"); Khoury v. Ford Motor Credit Co., No. 13-11149, 2014 WL 840252, at *4 (E.D. Mich. Mar. 4, 2014) (rejecting request for inherent-authority sanctions where "there [was] no indication that Plaintiff's counsel filed the case for an improper purpose").

11

Court. Khalil also suggests that one or more of the state-court cases may have been frivolous, but he declines to develop this argument, and the record does not support a finding that El-Khalil and Gonek filed any frivolous suits against Khalil in state court. The parties reached a settlement in Khalil, No. 21-004265-CB; El-Khalil survived in part a motion for summary disposition in El-Khalil, No 17-016659-NO; and even courts within Michigan's judicial system have disagreed about how to resolve Oakwood Health Care, a case in which Khalil's involvement is unclear. See 1/19/22 El-Khalil, No. 21-004265-CB Op. & Order; Oakwood Health Care Inc., 2019 WL 6045564.

Similarly, Khalil points to a physical altercation in which he asserted "his right to self-defense" against El-Khalil. Br. in Supp. Mot. at 5. But Khalil has not demonstrated merely by referencing that quarrel that El-Khalil was motivated to file a frivolous suit on grounds unrelated to the litigants' altercation. Nor does Khalil move the needle in his favor by stating that El-Khalil "[a]ttempted but failed" to revoke his privileges at multiple unspecified hospitals; Khalil provides no further explanation and makes no effort to tie this accusation to El-Khalil's filing of the present action. "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." Walsh v. Doner Int'l Ltd., Inc., 336 F.R.D. 139, 142 (E.D. Mich. 2020) (punctuation modified).

Khalil also takes issue with El-Khalil's purportedly unsubstantiated allegations in the present case—specifically, his apparently inconsistent testimony that a certain patient both (i) had "most" of her feet removed and (ii) still had nine toes. But the Court cannot find that this tension in El-Khalil's testimony amounts to clear and convincing evidence that he filed the initial suit for an improper purpose such as harassment. And to the extent that Khalil believes these statements constitute defamation or perjury, he can seek recourse in a separate action. As presented by Khalil, these issues are not sufficient bases for sanctions under this Court's inherent powers.

As Khalil correctly notes and supports with authorities, see Br. in Supp. Mot. at 9, "[a] 'pattern of asserting meritless claims and advancing baseless and previously rejected arguments' can . . . establish that an attorney and his firm acted in bad faith or with an improper purpose," BAC Home Loans Servicing, L.P. v. Wells Fargo, N.A., No. 11-10327, 2013 WL 1147761, at *3 (E.D. Mich. Mar. 19, 2013) (quoting Issa v. Provident Funding Grp., Inc., No. 09-12595, 2010 WL 3245408, at *4 (E.D. Mich. Aug. 17, 2010)).

However, the cases cited by Khalil demonstrate the impropriety of awarding sanctions under this Court's inherent authority in the present suit. In BAC, the court denied the defendant's motion for sanctions, rejecting the defendant's proposal that "the Court should sanction [the plaintiff] for filing a frivolous action" and for "ignoring dispositive legal authorities." 2013 WL 1147761, at *2. The court's conclusion in that case applies with equal force here: "Sanctions are not warranted because [the movant] has not adequately demonstrated that [the plaintiff] or its counsel did something more than file an action that was ultimately dismissed," and "[c]ourts generally have granted sanctions under their inherent authority when the sanctionable conduct was much worse than the conduct in this case." Id. at *3. The conduct featured in the cases cited by BAC provide further contrast to El-Khalil and Gonek's act of filing the FCA claim, even in the context of the parties' contentious history.[5]

---

[5] See Metz, 655 F.3d at 488–490 (affirming grant of motion for sanctions under inherent powers where plaintiff filed complaint asserting claims that were identical to claims previously dismissed with prejudice against same defendant); Thompson v. Moore, No. 09–2033, 2011 WL3289728, at *5–*6 (N.D. Ohio Aug.1, 2011) (imposing sanctions under inherent authority where plaintiff's counsel used lawsuit as "burdensome [] bargaining chip" to settle other litigation, fought removal to federal court, failed to file timely opposition to defendants' dispositive motion without good cause, and made no discovery requests) (punctuation modified); Dubuc v. Green Oak Twp., 482 F. App'x 128, 132–133 (6th Cir. 2012) (finding that it was not an abuse of discretion for district court to grant sanctions under inherent powers where pro se plaintiff—an attorney—had filed at least 10 lawsuits against same defendant, where plaintiff and his counsel indicated that "they knew the claim was frivolous" by "opting to dismiss the claim rather than respond to" defendant's dispositive motion, and where it was "not speculative to infer" that plaintiff's "motives" for filing suit were to "cause[] both harassment and delay because he caused [defendant] to be divested of

Issa found that sanctions were appropriate against a law firm that filed "90+ cases involv[ing] nearly identical issues" within a "few-month period" where the firm was "using many of these lawsuits as a means of conducting fishing expeditions" and where it "appear[ed] that [the firm and its attorneys] were not especially interested in securing relief on the merits of the claims asserted on behalf of their clients, but rather were commencing litigation solely for the purpose of obtaining an additional bargaining chip to be used in an attempt to negotiate a more favorable resolution." 2010 WL 3245408, at *4. The circumstance presented by El-Khalil's filing of state-law suits—none of which Khalil has shown to be frivolous—are nothing like the improper litigation strategy sanctioned in Issa.

Khalil and El-Khalil certainly have developed a hostile relationship. However, Khalil has not carried his burden of showing by clear and convincing evidence that El-Khalil's motive for filing this action was the equivalent of bad faith. Metz, 655 F.3d at 489; Mich. Immigrant Rts, 2020 WL 5627088, at *3. Bad blood is not tantamount to bad faith. The Court denies Khalil's motion for sanctions under this Court's inherent powers.

**D. Sanctions Under 28 U.S.C. § 1927**

A court may award sanctions under § 1927 against "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously . . . ." 28 U.S.C. § 1927. A court has "broad discretion" in making this determination. UrbCamCom/WSU I, LLC v. Lexington Ins. Co., No. 12-cv-15686, 2014 WL 6612260, at *2 (E.D. Mich. Nov. 20, 2014) (denying motion for § 1927 sanctions). Khalil may seek § 1927 sanctions only against Gonek, not against El-Khalil. See

---

its primary counsel [by naming counsel as defendant in amended complaint] and forced it to find new counsel").

Rentz v. Dynasty Apparel Indus., Inc., 556 F.3d 389, 396 n.6 (6th Cir. 2009) ("[Section] 1927 does not authorize the imposition of sanctions on a represented party . . . .").

As Khalil correctly submits, see Br. in Supp. Mot. at 10; Reply to Gonek Resp. at 5–6, to award sanctions under § 1927, "[t]he court need not find bad faith." Davis, 2018 WL 564235, at *2 (citing Dixon v. Clem, 492 F.3d 665, 679 (6th Cir. 2007); In re Ruben, 825 F.2d 977, 984 (6th Cir. 1987) (noting that § 1927 sanctions may be appropriate "despite the absence of any conscious impropriety") (punctuation modified, emphasis in original)).

Khalil's arguments that Gonek improperly multiplied the proceedings in the present case rely on Khalil's assertions that (i) Gonek filed an initial complaint asserting frivolous FCA claims, (ii) Gonek maintained those same frivolous claims in his amended complaint, and (iii) Gonek "continued his bad faith lawsuits, complaints, and unsubstantiated claims against Defendant which started in the latter part of 2017, and continue now with the filing of the [2021 Wayne County Circuit case]." Br. in Supp. Mot. at 10.

### 1. Filing of Meritless Claims in Initial Complaint

As Gonek correctly observes, see Br. in Supp. Gonek Resp. at 18, courts in this district have declined to award sanctions under § 1927 based on the filing of allegedly frivolous claims in an initial complaint. The court in Beverly v. Shermeta L. Grp., PLLC explained:

> Since the plain language of the statute only penalizes attorneys who vexatiously and unreasonably "multiply" proceedings, Courts generally do not impose sanctions under 28 U.S.C. § 1927 based on the filing of an initial complaint that turns out to be meritless. . . . [T]his Court agrees with numerous other courts that have addressed the issue head-on in finding that the plain reading of Section 1927 does not permit an attorney's fee award based on the filing of Plaintiff's initial complaint.

No. 2:19-cv-11473, 2020 WL 2556674, at *1 (E.D. Mich. May 20, 2020) (citing Jensen v. Phillips Screw Co., 546 F.3d 59, 65 (1st Cir. 2008) ("[W]e join an unbroken band of cases across the courts of appeals holding that a lawyer cannot violate section 1927 in the course of commencing an

15

action."); In re Keegan Mgmt. Co., Sec. Litig., 78 F.3d 431, 435 (9th Cir. 1996) ("The filing of a complaint may be sanctioned pursuant to Rule 11 or a court's inherent power, but it may not be sanctioned pursuant to § 1927.")).

Consistent with these authorities, this Court finds that Gonek's act of filing a complaint asserting FCA claims that turned out to be unmeritorious does not amount to a vexatious or unreasonable multiplication of proceedings worthy of sanctions under § 1927.[6]

**2. Maintenance of Meritless Claims in Amended Complaint**

Khalil also argues that Gonek improperly multiplied the proceedings because (i) Khalil filed a motion to dismiss identifying Sixth Circuit caselaw requiring an employment-like relationship in support of an FCA claim, but (ii) on notice of this authority, Gonek filed an amended complaint asserting the same meritless claim against Khalil.

Gonek's act of filing an amended complaint did not unreasonably or vexatiously multiply any proceedings in this case. Khalil filed his first motion to dismiss on November 11, 2018 (Dkt. 30). The Court did not rule on that motion. On November 28, Gonek filed El-Khalil's first amended complaint as of right, see Am. Compl., and this Court denied Khalil's first motion to dismiss without prejudice (Dkt. 36). On January 8, 2019 Khalil filed another motion to dismiss (Dkt. 42). Khalil's argument that El-Khalil's FCA claims were meritless presented in that second motion was word-for-word identical to Khalil's argument already presented in his first motion.

---

[6] Khalil cites Ridder v. City of Springfield, 109 F.3d 288 (6th Cir. 1997), a case where the Sixth Circuit affirmed the finding that an attorney's pursuit of frivolous claims merited § 1927 sanctions. See Br. in Supp. Mot. at 10 (citing Ridder, 109 F.3d at 298). But this Court agrees with the court in Beverly that Ridder "affirm[ed] a sanction for the five years of legal wrangling that resulted from the filing of the initial complaint—not for the filing of the initial complaint itself." 2020 WL 2556674, at *1. Ridder does not conflict with the proposition that Gonek's filing of a complaint containing meritless claims does not implicate § 1927. See Ridder, 109 F.3d at 298 ("[T]he mere finding that an attorney failed to undertake a reasonable inquiry into the basis for a claim does not automatically imply that the proceedings were intentionally or unreasonably multiplied.").

See 1st Khalil Br. in Supp. Mot. to Dismiss at 13–16; 2d Khalil Br. in Supp. Mot. to Dismiss at 13–17 (Dkt. 42).[7] Khalil did not file any reply in support of his second motion to dismiss, and he does not identify any other proceedings relevant to that second motion. This Court granted Khalil's second motion to dismiss as to El-Khalil's FCA claims on May 31, 2019. See 5/31/19 Op. & Order.

In this circumstance, the reiteration of FCA claims in an amended complaint—even if they turned out to be meritless—does not amount to sanctionable conduct under § 1927. See Beverly, 2020 WL 2556674, at *2 (declining to award § 1927 sanctions based on plaintiff's "weak and ill-considered" argument asserted in amended complaint, noting: "if advancing meritless arguments were enough to justify sanctions, the entire field of discovery-related motions practice would be a lucrative engine for generating attorney's fees"). The proceedings supposedly multiplied here amounted to no more than Khalil cutting and pasting old language and refiling an argument previously denied without prejudice. For the purposes of measuring any multiplication of proceedings, Gonek's filing of an amended complaint was the functional equivalent of his having filed the original complaint—which is insufficient to merit § 1927 sanctions. See Beverly, 2020 WL 2556674, at *1; Jensen, 546 F.3d at 65; Keegan, 78 F.3d at 435.

The cases cited by Khalil where § 1927 sanctions were appropriate featured far more egregious misconduct and greater multiplication of papers. In Davis, for example, the court sanctioned plaintiffs for filing amended pleadings, an "emergency" motion for declaratory judgment, and a motion to strike—all in support of claims that were "frivolous," claims that plaintiffs "should have known [] they lacked standing to raise," or arguments that were "clearly

---

[7] The Court has identified only two minor grammatical differences between the briefs filed in support of the two motions. Compare 1st Khalil Br. in Supp. Mot. to Dismiss at 14, 16, with 2d Khalil Br. in Supp. Mot. to Dismiss at 15, 17. The substance of the relevant language is identical, down to the words Khalil chose to emphasize.

without merit." 2018 WL 564235, at *1, *3–*4. The extensive motion practice in Davis contrasts sharply with Gonek's refiling of a claim in the amended pleading at issue in this case.

Dixon is similarly inapposite. In finding that the district court had not abused its discretion in awarding § 1927 sanctions against an attorney who asserted claims that were "largely specious" and "extremely unlikely to prevail," the Sixth Circuit emphasized factors not present here: counsel had been "reprimanded and/or sanctioned on at least three separate occasions by three separate federal courts" and utilized a "type of language" that "got him into trouble" (comparing proceedings to a "rape"). Dixon, 492 at 678. The court concluded: "[W]e cannot emphasize enough that [the attorney] needs to learn his lesson at some point . . . ." Id. at 679. Khalil has not established that any such lesson is appropriate on the basis of Gonek having refiled a claim in an amended complaint.

Khalil also cites Jones v. Cont'l Corp., where the Sixth Circuit held that, "at least when an attorney knows or reasonably should know that a claim pursued is frivolous, . . . a trial court does not err by assessing fees attributable to such actions against the attorney." 789 F. 2d 1225, 1230–1231 (6th Cir. 1986). The Jones court, however, reversed an award of attorney fees against plaintiff's counsel under § 1927, rejecting the argument that assertions in the complaint could be "characterized as unreasonable and vexatious multiplication of the litigation." Id. at 1232. The same result is appropriate here.

Khalil's second asserted ground for § 1927 sanctions fails.

3. **Continued Filing of Suits and Assertions of Unsubstantiated Claims**

Khalil next points to the "bad faith lawsuits" and "complaints" filed in state court, but as discussed, his mere reference to multifaceted litigation does not establish that those actions were filed in bad faith. Nor has Khalil demonstrated that those suits were frivolous. And regardless, courts have found that "a court may not sanction a party under § 1927 for conduct occurring in

state court." Butcher v. Laws. Title Ins. Corp., No. 05-cv-145, 2005 WL 2242881, at *1 (W.D. Mich. Sept. 12, 2005) (finding that court was unable to sanction plaintiff under § 1927 for conduct in state court prior to removal).

Nor has Khalil demonstrated that Gonek should be sanctioned for the claims asserted in this action that Khalil considers irrelevant and unsubstantiated. The specific example cited by Khalil is inconsistent testimony in El-Khalil's affidavit and deposition. But Khalil acknowledges that El-Khalil—not Gonek—is responsible for this testimony. See Reply to El-Khalil Resp. at 1–2 ("Plaintiff in his response has failed to address that he not Gonek gave deposition testimony whereby . . . he appears to have committed perjury."); see also id. at 4–5. Khalil also argues that Gonek made unsubstantiated accusations that El-Khalil engaged in "fraud," which allegations were irrelevant to El-Khalil's claims. See Br. in Supp. Mot. at 13–14. But to the extent that the assertion of unsubstantiated and irrelevant allegations can rise to the level of an improper multiplication of proceedings, this Court—consistent with courts facing similar disputes—declines to find that any superfluous accusations incorporated into El-Khalil's claims constitute sanctionable conduct.[8]

---

[8] See, e.g., In re Man Kit Ng, No. 11-46867, 2018 WL 3956608, at *3 (Bankr. E.D.N.Y. Aug. 14, 2018) (declining to award § 1927 sanctions based on non-movant's accusations that movant was "perjurious," grossly negligent, covetous, and abusive; characterizing such "irrelevant personal or ad hominem attacks" as an "unsuccessful and misguided attempt at rhetorical embellishment" that "a reasonable reader would ignore") (punctuation modified); Dandana, LLC v. MBC FZ-LLC, No. 08-5592, 2012 WL 1354584, at *7 (D.N.J. Apr. 18, 2012) (declining to award § 1927 sanctions against plaintiff though plaintiff "acted too hastily in filing its Motion . . . without further substantiation of evidence before it"); J & J Sports Prods., Inc. v. Montanez, No. 1:10-cv-01693, 2010 WL 5279907, at *4 (E.D. Cal. Dec. 13, 2010) (rejecting plaintiff's argument that defendants' filing of "immaterial and impertinent affirmative defenses" merited § 1927 sanctions though acknowledging that those defenses might be "irrelevant") (punctuation modified); Hart v. Baca, No. cv-01-01866, 2005 WL 1168422, at *1 (C.D. Cal. May 17, 2005) (finding that party moving for sanctions had not met § 1927 standard by arguing that non-movant had included a "false and unsubstantiated assertion" in papers) (punctuation modified).

Khalil has not demonstrated that Gonek "multiplie[d] the proceedings in [this] case unreasonably and vexatiously . . . ." § 1927. The Court denies Khalil's motion for sanctions under § 1927.

### III. CONCLUSION

For the reasons discussed, the Court denies Khalil's motion for sanctions (Dkt. 252).[9]

SO ORDERED.

Dated: September 8, 2023  
       Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

---

[9] The Court also denies Khalil's request that the Court "sanction Plaintiff by restricting his ability to file against this Defendant without first showing a non-frivolous motive and leave of this Court." Br. in Supp. Mot. at 23 (citing Kersh v. Borden Chem., a Div. of Borden, Inc., 689 F. Supp. 1442, 1450 (E.D. Mich. 1988)). Khalil's caselaw demonstrates that courts consider the following factors when "determining whether or not to restrict a litigant's future access to the courts":

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?, (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

Kersh, 689 F. Supp. at 1450. In light of the arguments presented by Khalil, these factors collectively weigh against this Court restricting El-Khalil's future access to the courts. For the reasons discussed throughout this opinion, Khalil has not established that El-Khalil filed any lawsuits in a vexatious, harassing, duplicative, or bad-faith manner.